## Sheerer's assignees *against* Jacob Lautzerheizer.

A voluntary deed of assignment, made by a debtor of his estate to trustees, for the benefit of his creditors, giving a preference to such of them as should execute releases to him within a limited time; and allowing to the trustees, upwards of a year for executing the trust, and distributing the funds thereof among the creditors, is void as against those of his creditors who did not join in and accept of it.

An action of trespass *de bonis asportatis,* may be maintained by the trustees named in such deed, against the sheriff for taking goods included in the assignment, under colour of a *fieri facias,* sued out on a judgment against the assignor, after the return day of the *fieri facias* had elapsed, and after the trustees had taken possession of the goods under the assignment.

The deputy sheriff, not being a party on record to the suit, is a competent witness for the plaintiffs, and may be compelled to give evidence as to the taking of the goods, whether he took them himself or not; and when and how they were taken, whether before or after the return day mentioned in the *fieri facias,* had elapsed or not.

ERROR to the common pleas of *Mercer* county.

This was an action of trespass brought by the assignees of John Sheerer, Jun. *v.* Jacob Lautzerheizer, sheriff of the county of Mer-

cer, for taking and selling a quantity of store goods.   The plaintiffs claimed the goods under a deed of assignment, dated the 11th and 24th of December 1832, made by John Sheerer, Jun., who was admitted to have been the owner of them at the time, to the plaintiffs in trust for his creditors, which deed is as follows:

This indenture made the 11th day of December 1832, between John Sheerer, Jun., of the town of New Castle, Mercer county, and state of Pennsylvania of the one part, and John Fisher, Esq., Robert M'Farlane and David Courtney, Jun., of the aforementioned county and state of the other part.   Whereas, the said John Sheerer, Jun., owing to sundry losses and misfortunes, is at present unable to discharge his just debts, and is willing to assign all his property for the use of his creditors.   Now this indenture witnesseth, that the said John Sheerer, Jun., as well in consideration of the premises, and for the purpose of making a just distribution of his estate and effects among his creditors, as also of the sum of one dollar to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, assigned, transferred and set over, and by these presents, doth grant, bargain, sell, assign, transfer and set over unto the said party of the second part, their heirs and assigns, all the following lots, viz: out lot, No. 2, in the town of East New Castle, (excepting such part thereof as was sold to Henry Stogges) also, one lot in New Bedford, Mercer county, numbered in the plot, No. 66; and also, all his goods, wares, merchandizes, chattels and effects, and property of every kind, real, personal and mixed.   To have, and to hold the same, to the said party of the second part, their heirs and assigns, to the proper use and behoof of the said party of the second part, their heirs and assigns forever.

In trust, however, and to the intent and purpose, that they, the said party of the second part, shall, and do as soon as convenient, sell and dispose of all the lands and tenements, goods and chattels, of him, the said John Sheerer, Jun., and collect and recover all the outstanding claims and debts to him due, and with the money arising therefrom, after deducting their reasonable costs and charges, shall, and will pay, equally and ratably, on the 1st day of January 1834, all such debts as are due by the said John Sheerer, Jun., to any person or persons, who shall on or before the 1st day of March next, ensuing the date hereof, execute to the said John Sheerer, Jun., a release of their claims respectively.   And the surplus, if any remains, after fulfilling the trust aforesaid, pay over and return to the said John Sheerer, Jun., his heirs, executors, administrators or assigns, in a reasonable time thereafter.   In testimony whereof, the said John Sheerer, Jun., hath hereunto set his hand and seal the day and year first above written.

JOHN SHEERER, Jun. [ L.S. ]

Sealed and delivered in presence of Joseph Emory, J. S. Cossitt.
The above named John Sheerer, Jun., finding upon further

examination, that there is an unintentional omission in the provisions of the above assignment, which the said John Sheerer, Jun., is anxious to make as operative and equitable as lies in his power; he does hereby further covenant and agree, as a part and parcel of the above assignment, that all the property, moneys and effects whatsoever, which do or shall pass to the abovenamed assignees by the above assignment, for the purposes therein declared; shall, together with all the proceeds of assignment, after paying such of the creditors of said John Sheerer, Jun., as shall release him from further liability for their claims on or before the 1st day of March next by the said assignees, be rateably distributed among all other creditors of said John Sheerer, Jun., and if, after paying all such, there be any balance in their hands, they shall pay the same to the said John Sheerer, Jun.   In testimony whereof, I have hereunto again set my hand and seal, the day and year above written.

JOHN SHEERER, Jun. [ L.S. ]

In presence of Joseph Emory, James S. Cossitt.

Acknowledged and recorded December 24th, 1832.

The plaintiffs gave bond with surety, for the faithful performance of the trust; took possession of the goods, had them appraised, and filed the appraisement thereof in the clerk's office, in conformity to the act of assembly in this behalf.

The defendant undertook to justify the taking of the goods, by virtue of a *fieri facias* sued out of the court of common pleas of Mercer county, at the suit of S. Baird & Co., against John Sheerer, Jun., the assignor of the plaintiffs, returnable to December term 1832, of that court, which is said to have commenced on the 24th of December, in that year, and which was also the return day mentioned in the *fieri facias.*  The record of the judgment upon which the *fieri facias* was sued out, together with the *fieri facias* itself, were given in evidence.   On the *fieri facias,* was endorsed a seizure of some real estate, and under date of the 24th of December 1832, said to be the return day of the *fieri facias,* was also endorsed a levy or seizure of the goods.   This endorsement was said to have been made by John Keck, a deputy of the defendant.

The plaintiffs, to show that no seizure in fact of the goods was made, offered to prove by Keck that he made the endorsement, as to the goods, on the *fieri facias,* on the return day thereof, at the town of Mercer, where the court was in session, many miles distant from where the goods were, without either seeing them or having them within his control.   Defendant's counsel objected to the evidence, and the court overruled it; to which opinion of the court, the plaintiffs' counsel excepted, and the court at their instance, signed a bill of exceptions.

The court also charged the jury that the deed of assignment was invalid; to which the plaintiffs' counsel also excepted.

Those exceptions were assigned for error.

VI.—3 T

[Sheerer v. Lautzerheizer.]

*Holstein,* for plaintiffs in error.
*Pearson,* for defendant in error.

The opinion of the court was delivered by

Huston, J.—This was an action for taking and carrying away the goods of the plaintiffs, brought against the defendant, who was sheriff of Mercer county.

John Sheerer being indebted to sundry persons, on the 11th of December 1832, executed an assignment to the plaintiffs, John Fisher, Esq., Robert M'Farlane, and David Courtney, Jun., of all his property, real and personal, for the benefit of his creditors; a store of goods was specified as part of this property. In trust, however, and to the intent, that the said assignees shall and do, as soon as is convenient, sell and dispose of all the lands and tenements, goods, and chattels of him, the said John Sheerer, and collect and receive all the outstanding debts to him due, and with the moneys arising therefrom, (after deducting their reasonable costs and charges,) pay equally and rateably, on the 1st day of January 1834, all such debts as are due by the said John Sheerer, Jun., to any persons who shall, on or before the 1st day of March next ensuing the date, execute to said John Sheerer, a release of their claims, respectively; and the surplus, after fulfilling the trusts aforesaid, pay over and return to the said John Sheerer, Jun , his heirs, executors, administrators, or assigns, in a reasonable time thereafter. This paper was sealed and delivered in the presence of two witnesses.

Afterwards, on consultation, finding, as is recited, that an unintentional error had been committed in the above assignment, and anxious to make it as operative as possible, the assignor covenants and agrees, that, after paying such as should execute releases before the 1st of March, then next, the balance should be distributed among his other creditors; and it was again signed and sealed in the presence of two witnesses, and then, on the 24th of December 1832, it was acknowledged and recorded.

In the paper book there is not a word said as to when it was delivered to, or accepted by the assignees, nor when they took possession.

In the mean time, S. Baird & Co., having a judgment against Sheerer, took out a *fieri facias,* and put it into the hands of the sheriff, on the 17th of December, who returned a levy, endorsed thereon, as follows: "December 18th, 1832, levied on lot No.     , in the borough of Newcastle, and also, by virtue of the within writ, I have levied on a store of goods, in the town of Newcastle, as the property of the defendant;" and then follows a schedule of the goods.        (Signed)        Joseph Lautzerheizer, sheriff.
by John Keck, deputy.

By virtue of this, the sheriff sold goods to the amount of 1208 dollars, being enough to pay the debt and costs.

[Shcerer v. Lautzerheizer.]

On the 9th of January 1833, an appraisement of the property assigned was filed, amounting to 5207 dollars. And on the 18th of January 1833, the assignees executed a bond, the condition of which, it is stated, conformed to the act of assembly, "if the trustee shall faithfully execute the trust confided to him, then this bond to be void," &c.

The judge told the jury, "that the deed of assignment, giving more than one year for the payment of the proceeds of the sale of the goods, rendered the assignment invalid. The bond of the assignees would not compel them to settle in one year. The additional assignment to cure defects of the first, is dated the 24th of December 1832. The plaintiffs have given in evidence, the writ on which the levy and sale were made, for doing which, this action of trespass was brought, by which it appears that the levy was made on the 18th of December, and six days before the additional assignment, so that the plaintiffs, on their own showing, are not entitled to recover."

The error assigned is, in saying that the assignment was invalid, because it directed the assignees to pay over in a period longer than a year from the date of the assignment, viz. the 1st of January 1834.

The case of Wilt *v.* Franklin, 1 *Binn.*, is the leading case, as to these voluntary assignments; and I believe no judge or lawyer is to be found, who has not regretted some of the matters decided in it, but we have gone far beyond it, in almost every point there decided. The legislature have, by various acts, recognized such assignments and prescribed modes of compelling settlement of the accounts of assignees and trustees, who, by the act of 1818, might be cited to settle, if they omitted to do so for two years, and by the act of 1828, they may be called to a settlement at the end of one year; but these acts are predicated on the idea that the trustee will collect and pay dividends as quickly as possible, and that at the end of one year, the assignee who has not settled and paid is in default. We have but few cases in which the assignor has attempted to give the assignee a fixed period; an extension of time within which, and to the extent of which, he may sell on credit, or during which he may permit the assignor to enjoy the property. Those who release may be said to agree to the terms, but it is not the case of such alone to which we must look. The other creditors have rights, and they ought not and cannot be unreasonably delayed. Those who have released and thus agreed to the terms, could not, perhaps, call the assignees to account. An opinion has been held, to which, however, I do not at present agree, that those only whose debts are provided for, can call the assignees to account. If so, how long must the other creditors wait? Admitting that any creditor can cite the assignees, a general creditor gets nothing, if the assignment is valid, until those for whose use the assignment was made are paid. If the debtor can give time beyond the law, how far can he go? If nineteen days in this case, it

[Sheerer v. Lautzerheizer.]

may be so many weeks in the next case, and as many months in a succeeding case. We are of opinion there was no error in the charge of the court.

There was, also, a bill of exceptions to a rejection of evidence by the court. The plaintiffs having given in evidence, the judgment, execution, and return of S. Baird & Co., against John Sheerer, offered to prove by John Keck, the deputy, who made the return, that the part of the return, beginning with the words, " and also," were written on the return day of the writ, viz. the 24th of December 1832, at Mercer, many miles from the goods, and that he did not actually take the goods into his custody, for three or four days after. The court rejected the evidence. No error was assigned by the counsel of the plaintiffs in error, on this. Generally, when counsel do not argue here a point made below, it is because they know it would do them no good on a second trial if they reversed the cause on that; but in this, we may say, if the assignment was void against creditors, the sheriff coming with the *fieri facias* of a judgment creditor, and taking the goods, is protected from any liability of suit to them. The assignment as to him, armed with the authority of the law, in favour of a creditor, is utterly void and of no effect, and they can support no suit against him.   5 *Burr.* 2831; 2 *Pick.* 411; 2 *Stark. Ev.* 750–1.

After the above was written, on a subsequent consultation, a majority of the court were of opinion, that the plaintiffs in error might have a reversal of the judgment, on the last point and a *venire de novo*, if he pleased.   If he does so, several matters must be proved more particularly than were done here; and some points of evidence and of law will occur, on which I do not intimate any opinion, as they did not arise nor were argued here.

It is said, in 4 *Binn.* 500, by Chief Justice Tilghman, that he does not think a deputy, who has committed a trespass, can be a witness to prove it in a suit against the sheriff.

If Keck, who signed the return, (and not the sheriff,) after returning the writ, not having made a levy, afterwards went and took the goods, is not he the trespasser, and the sheriff not liable for what his deputy did, not having a writ; and if plaintiff recovers against the sheriff, and this verdict and judgment will be evidence for the sheriff, in a suit against Keck, can Keck be compelled to give evidence in this case?

KENNEDY, J.—Under the first section of the "act to compel assignees to settle their accounts," passed the 24th of March 1818, and the third section of the supplement thereto, passed April the 14th, 1828, the courts of common pleas of the several counties within this state are authorized, at any time after one year, in cases of either voluntary or compulsory assignments, made by debtors of their estates, for the benefit of their respective creditors, upon the application of the latter, to issue citations to such assignees or trustees,

[Sheerer v. Lautzerheizer.]

requiring them to state and settle their accounts upon oath or affirmation. This being done, which the courts have full power to compel, they are then empowered to decree a distribution of the estate, so assigned in each case, agreeably to the intention of the assignment. But it is obvious, that if debtors are permitted to appoint any time they please, for the settlement and distribution of the estate assigned, the acts of assembly which authorize the courts to compel it to be done at any time *after one year*, will be defeated. But beside the acts on this subject, it is contrary to the principles of the common law and the statute of 13 Eliz. that debtors should be permitted to make any disposition of their estates that may unnecessarily tend to hinder, delay or defraud their creditors in obtaining payment of their debts. If the former, therefore, make assignments for the purpose of paying their debts, it would seem to comport better with what seems to be required in such cases, that there be no time allowed or given for the execution of such trusts, beyond what is really necessary in order to effect that end, without producing or making any unreasonable sacrifice of the estate. To accomplish this, however, it is easy to perceive that it is impracticable, in most cases, to fix beforehand upon any precise time, within which it may be brought about. But judging from the enactments of the legislature, it may reasonably be inferred that they considered one year sufficient in most, if not in all cases; and, therefore, have put it in the power of the creditors, at any time after that period shall have elapsed, to call the assignees or trustees to account. Further time may, no doubt, in many cases, be requisite for making a final settlement and distribution of estates assigned for paying the debts owing by the owners thereof; but then this, where the creditors are not all willing to grant it, can only be obtained upon application to the proper court, and sufficient cause shown. Under this view, it may be advisable in making such assignments, unless all the creditors are present and consenting that it shall be otherwise, to avoid appointing any precise time for making distribution and discharging the execution of the trust; but leave it to be done with as much despatch as the nature and condition of the estate, with other attending or supervening circumstances will admit: and at all events, it is certain that the legislature have thought one year amply sufficient; and every deed of assignment, therefore, extending the time beyond that period, except by and with the consent of all the creditors, being repugnant to the provision of the act mentioned above, must be deemed void. The court below were therefore right in pronouncing the deed of assignment here invalid.

But then it must be understood, that it is only invalid as against those creditors of the assignor who did not join in and have not assented to it; for as between the parties, the assignor and the assignees, it is good and binding; and good, too, against all the rest of the world. But then the creditors, who have not joined in be-

coming parties to the assignment, can only take advantage of its invalidity as against them, by taking the property assigned in execution after they shall have obtained judgments against the assignor, their debtor, whereon they may sue out writs of execution for that purpose. But still, upon an execution, when regularly obtained, the officer to whom it is directed can only take the property after it has been placed in his hands, and before the return day therein mentioned has expired. It is of no force, and he has no authority whatever to seize the property after the execution has become returnable. This he could not do, supposing there were no assignment, and that the property were still in the possession of the debtor himself, against whom the execution had been sued out; or if he did, he would render himself liable, in trespass or trover, to the debtor, for the value of it. Devoe *v.* Elliot, 2 *Caines's Rep.* 243; Vail *v.* Lewis, 4 *Johns. Rep.* 450; Harvey *v.* Broad, 6 *Mod.* 148, 159, 196. Now it cannot be denied here that the plaintiffs, the assignees of the debtor, the assignment being effectual as between the parties to it, became thereby invested, at least with all the rights of the debtor to the goods; and being invested fully with his right of property therein, were entitled to maintain the action of trespass against the defendant, if he took the goods after the return day of the execution, in the same manner that the debtor himself might, provided he had made no assignment.

These principles go far to dispose of the other matter assigned for error, and to show that the court below decided erroneously in rejecting the evidence offered by the plaintiffs. They offered to prove by John Keck, who acted as the deputy of the defendant in making the return to the *fieri facias* at the suit of Baird & Co. *v.* Sheerer, the assignor of the plaintiffs, that, though the return, as made on the writ, imported a seizure of the store goods as being made, for aught that appeared to the contrary, while the *fieri facias* was in force, and before the return day thereof had expired, yet in fact, there was no seizure of them until three or four days afterwards: that the return of the levy, as to the goods, was endorsed by Keck on the writ during the return day thereof, at the town of Mercer, where the court was holding, and the writ made returnable, a distance of many miles from the goods, which were at the town of Newcastle; and that the goods were not seen nor taken till three or four days afterwards, when they were for the first time taken by the sheriff. This undoubtedly was not only pertinent, but very important evidence, because it tended to prove a fact which, if true, would most clearly, according to the principles laid down above, have rendered the defendant a trespasser, and liable to the plaintiffs in this action. If it be then, as the evidence offered went to show, that the goods were not within the view, reach or control of the sheriff or his deputy, at the time he endorsed the levy or seizure thereof on the writ, the endorsement did not amount to a seizure of the goods either in law or in fact. A seizure

[Sheerer v. Lautzerheizer.]

of goods, or taking of them in execution, can only be made by the officer when he has them within his view or control, so that he may take immediate possession of them. Lane *v.* Jackson, 5 *Mass. Rep.* 157; Train *v.* Wellington, 12 *Ibid.* 497; Wood *v.* Vanarsdale, 3 *Rawle* 401.

Some doubt, I believe was expressed, whether the sheriff's return of the seizure of the goods was not to be taken to have been made according to its natural import; and whether it was not conclusive evidence of the fact. Although, generally, the return of the sheriff to process for judicial purposes, is regarded as being true, and cannot be contradicted, in the suit or proceeding in which it is made, with a view to stop or delay the progress thereof, as it would necessarily tend to produce great delay, inconvenience and embarrassment; yet the sheriff, in order that no injury may arise from the falsity of his returns, is held responsible for their truth, and if not true in any case, he is liable to respond in damages to the party thereby injured. Hence, in a suit by, or against a sheriff, where his return to a writ or proceeding, as a ministerial officer, is made the ground of his claim or his defence, his return, at most, is only considered *prima facie* evidence of its truth. See Hyskell *v.* Given, 7 *Serg. & Rawle* 371; Gyfford *v.* Woodgate, 11 *East* 297.

It has, however, been suggested, that it may be questionable, whether Keck, who acted as the deputy of the defendant here, is a competent witness for the plaintiffs, or can be compelled to give evidence on their behalf. I am, I must confess, somewhat at a loss to conceive, upon what ground such question can well be made. It is obvious, that without a release from the defendant, Keck could not be a witness for him. Powell *v.* Hord, 2 *Ld. Raym.* 1411; because, if the claim of the plaintiffs be founded on the tortious act of Keck as his deputy, it would in effect be calling upon him to testify in his own favour, and to relieve himself from his liability to the defendant, as he would be bound to indemnify the defendant in case of a recovery against him in this action; and besides, the verdict and judgment here, if such recovery were to be had, would be evidence against Keck in an action against him by the defendant for indemnity. 1 *Stark. Ev.* 114, 135. It is clear then, that it is the interest, which the deputy has in the action, that renders him an incompetent witness for his principal; and accordingly it was ruled in Clarke *v.* Lucas, 1 *Ry. & M.* 32; S. C. 1 *Carr & Pay.* 156; 11 *Eng. Com. L.* 358; that an assistant employed by the sheriff's officer, was a competent witness for the defendant without a release, because he was in nowise answerable for the act complained of; but it is not only well settled, that it is no objection to his competency, when called on to testify against his interest, but likewise, that he may be compelled to do so, when he is not a party on the record to the suit. About 1804–5, the question, whether a witness could refuse to answer questions, because he might subject himself to a civil liability or charge, was propounded in

England by the House of Lords to the judges.   Mansfield, C. J. of the C. B.; Grose and Rooke, J's.; and Thompson, B. were of opinion that he was not; but the Lord Chancellor and the other judges, being eight in number, were of a contrary opinion.   1 *Hall's Law Journ.* 223.   It was settled, however, shortly afterwards by the passage of the statute of 46 *George* 3, *c.* 37, declaring the law in the affirmative, according to the opinion of the Lord Chancellor and the eight judges.   And so it has been held, and as I take it, finally settled in this state by the decisions of this court in Baird *v.* Cochran, 4 *Serg. & Rawle* 397, and Nass *v.* Vanswearingen, 7 *Ibid.* 192.

Then, in order to meet another suggestion, as to the liability of the defendant here, for the acts and conduct of his deputy.   Whether the defendant took the goods in person, or by Keck as his deputy, he is alike answerable for the trespass; because it is a well established rule, that the sheriff is answerable for the taking by the bailiff, who seizes under the *colour* of a warrant; the act of the bailiff being considered, for civil purposes, the act of the sheriff himself.   2 *Phil. Ev.* 214; Sanderson *v.* Baker, 2 *Bl. Rep.* 832; S. C. 3 *Wils.* 309; Cameron *v.* Reynolds, *Cowp.* 403; Ackworth *v.* Kempe, 1 *Doug.* 40, and the cases cited in 2 *Bl. Rep.* 833, 834.   And so the sureties of a sheriff are liable in damages for his trespass committed by seizing and selling the goods of B, under an execution against A.   Carmack *v.* The Commonwealth, 5 *Binn.* 184.   It would therefore seem, that whatever the sheriff does by colour of his office, without authority, to the prejudice or injury of any one, his sureties will be responsible for the damage sustained: and so upon a like principle, whatever the deputy does, under colour of his office as deputy sheriff, his principal will be held responsible for it.   It would be unreasonable, if not alarming, were it to be held otherwise, for the sheriff receives all the emoluments of the office, and is under no control whatever, in the appointments of his bailiffs or deputies; he may appoint whom he pleases, and therefore, it is perfectly reasonable and just, that he should be answerable for their acts and conduct as such.

Judgment reversed, and a *venire de novo* awarded.