## Ridgway *against* Stewart.

Mortgages of real or personal estate, given to secure the payment of money or debts, are not within the 5th section of the Act of 24th of March 1818, requiring deeds of assignment to be recorded within 30 days.

ERROR to the Common Pleas of *Montgomery* county.

This was an action of *trespass vi et armis quare clausum fregit et de bonis asportatis*, brought by Jacob Ridgway, Joseph R. Ingersoll, and others, surviving trustees of the Philadelphia, Germantown and Norristown Rail-road Company against Ardemus Stewart, Sheriff of Montgomery county, and Michael Wilt. Wilt, in 1840, obtained a judgment against the company, on which a *fieri facias* issued in the same year, and Stewart levied on and sold a locomotive engine and car as the property of the company. The plaintiffs gave notice to the defendants before the sheriff's sale that they claimed the property. The plaintiffs claimed title under an indenture of mortgage, dated 18th of May 1833, and a conveyance dated 22d of March 1839, of the property sold, as follows:

" This Indenture, made the 18th day of May, in the year 1833, between the Philadelphia, Germantown, and Norristown Rail-road Company of the one part, and Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., of the other part: Whereas, in and by a certain by-law or ordinance, duly enacted and made, at a meeting of the stockholders of said company, convened according to law, on the 16th day of May in the present year, the President and Managers of said company were authorized and directed to borrow on loan a sum of money not exceeding $300,000, at a rate of interest of six per centum per annum, to be reimbursed on the 1st day of May, which will be in the year 1843, and not before that time, without the consent of the lenders or their assigns, and to appropriate and pay into the hands of trustees a sufficient sum of money as the same shall be wanted to satisfy the interest on the sum borrowed for the space of two years, as the same shall during that time accrue; and in and by the said by-law or ordinance the said President and Managers were further authorized and directed, for the purpose of securing the repayment of such loan and the interest which shall accrue thereon, to *mortgage* or *convey* the whole of the real and personal estate of the said company, and the tolls, income and profits of said company, arising and accruing after the 1st day of May, which will be in the year 1835, excepting and saving so much thereout as shall be necessary to defray the expenses

of the administration of the affairs of the said company, and to pay for the necessary repairs of their road and works, in trust, to and for the purpose of securing the repayment of the loan and interest aforesaid, and further to give such other evidences and securities for the repayment aforesaid, as they shall deem advisable and direct : And whereas a subscription was opened, and sundry individuals and bodies corporate have lent or agreed to lend divers sums of money, amounting altogether to a sum exceeding $250,000, and which may be increased by the said President and Managers, by virtue of the authority aforesaid, to the sum of $300,000 : And in pursuance of the authority aforesaid, it has been agreed by the said President and Managers, that the said sum of money, borrowed and to be borrowed, shall be repaid on the 1st of May, which will be in the year 1843, and that it shall not be repaid prior to that time without the consent of the respective lenders or their assigns, to be convertible into stock of the said company at par at the option of the lenders, their respective executors, administrators or assigns, at any time prior to the 1st day of May, which will be in the year 1838, to be assignable in sums of not less than $100, and in and for no fractional parts of that sum ; and that in the mean time until the said sum of money loaned or to be loaned shall be repaid, altogether not to exceed the said sum of *$300,000*, interest shall be paid the lenders or their assigns at the rate of six per centum per annum, payable at the company's office in Philadelphia, on the 1st days of May and November annually, agreeably to the terms of certificates issued or intended to be issued therefor, on the amounts received and subject to the regulations contained and mentioned in the said certificates; and for the securing the said loan and interest in pursuance of the direction and authority aforesaid, have agreed to execute this indenture to the aforesaid Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., trustees appointed with the assent of the said lenders : Now this indenture witnesseth, that for and in consideration of the premises, and for the securing of the repayment of the said loan, and the interest which shall accrue thereon to the lender or lenders, their executors, administrators and assigns, as well as for and in consideration of the sum of $1 by the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., to the said The Philadelphia, Germantown and Norristown Rail-road Company paid, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said The Philadelphia, Germantown and Norristown Rail-road Company have granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, convey and confirm unto the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., their heirs, executors,

[Ridgway v. Stewart.]

administrators and assigns, and the survivors and survivor of them, and the heirs, executors, administrators and assigns of such survivors and survivor, all and singular, the lands, buildings, works, tenements and hereditaments, goods and chattels, and estate real, personal and mixed, whatsoever and wheresoever, of the said The Philadelphia, Germantown and Norristown Rail-road Company, and all the tolls, issues, income and profits of said company, from and after the 1st day of May, which will be in the year 1835, excepting and saving so much thereout and therefrom as shall be necessary to defray the expenses of the administration of the affairs of said company, and to pay for the necessary repairs of their road and works, together with all and singular the buildings, improvements, ways, alleys, passages, waters, water-courses, easements, franchises, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions, the remainders, the rents, issues and profits thereof as aforesaid, and all the estate, right, title, interest, property, claim and demand of the said The Philadelphia, Germantown and Norristown Rail-road Company whatsoever, in law or equity, of, in and to the same, and every part thereof, to have and to hold the estate and premises hereby granted or mentioned as intended so to be, hereditaments and appurtenances, and every part thereof, unto the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., their heirs, executors, administrators and assigns, and the survivors or survivor of them, and the heirs, executors, administrators and assigns of such survivors or survivor, to and for the only proper use, behoof and benefit of the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., their heirs, executors, administrators and assigns, and the survivors or survivor of them, and the heirs, executors, administrators and assigns of such survivors or survivor: *In trust,* nevertheless, for the uses and purposes hereinbefore recited and set forth; and to and for the use of the respective lenders aforesaid, their executors, administrators and assigns; in further trust upon any default in the payment of the interest which shall become due at the times hereinbefore specified to the lenders or their assigns by the said company, upon 30 days notice to the President and Managers of the said company by them the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage, and Joseph P. Norris, Jun., their heirs, executors, administrators and assigns, and the survivors or survivor of them, and the heirs, executors, administrators and assigns of such survivors or survivor, to be given to take possession of the estate, premises and property hereby granted, and to receive the issues, tolls, income, and profits thereof, and with the proceeds, after first deducting thereout so much as shall be necessary to defray the expenses of the administration of the affairs of said company, and the repairs

IV. — 49          2 H

[Ridgway v. Stewart.]

of the said road and works, which sum or sums deducted shall be paid by them to the treasurer of the said company, upon the warrant or requisition of the said President and Managers; shall secondly pay thereout to the lenders aforesaid or their assigns the amount of the said interest, which shall be respectively due them, and if any balance of the said proceeds shall remain, shall pay that balance to the treasurer of the said company for the time being, and shall forthwith surrender and give up to the said President and Managers the possession of the said estate, premises and property hereby granted, and cease to receive the tolls, income, issues and profits of the said company; it being understood that this last mentioned provision and trust relates only to the non-payment of interest as the same shall become due, and shall not be deemed or taken as affecting, altering or diminishing the estate, right, title and interest of the grantees herein named in the property and premises hereby granted in the event of the non-repayment of the principal of the said loan at the time hereinbefore said, (or its conversion into stock according to the terms of the said loan); and in further trust upon the repayment of the said loan to, (or the extinguishment of the same by the conversion of the same into stock of the said company as hereinbefore provided by the respective lenders, their executors, administrators or assigns), and the payment of the interest as the same shall accrue, upon demand made by the said President and Managers, to reconvey by a sufficient deed or deeds, assurance or assurances, to the said The Philadelphia, Germantown and Norristown Rail-road Company, their successors and assigns, all the estate, property and premises hereby granted, to and for their use and behoof for ever according to law discharged from this trust.

And it is hereby covenanted and agreed by and between the said parties of the first and second part, that they, the said The Philadelphia, Germantown and Norristown Rail-road Company, shall and will, from time to time, and at all times hereafter, so often as they shall acquire or become the owners of any other estate, or estates, or property, real or personal whatsoever, by good and sufficient conveyances and assurances, convey and assure the same parties of the second part, their heirs, executors, administrators and assigns, and the survivors or survivor of them, and the heirs, executors, administrators and assigns of such survivors or survivor, upon the trusts, and for the uses and purposes, and upon the terms and conditions in this present indenture declared and contained, so that the same and every part thereof shall become and be security to the said lenders, their executors, administrators and assigns, in like manner as the estates and property herein and hereby conveyed: and it is further covenanted and agreed by and between the said parties, that the said parties of the second part shall receive and hold from the said President and Managers from time to time so much money or moneys as shall

[Ridgway v. Stewart.]

be sufficient to pay the interest which shall accrue on the said loan until the 1st day of May, which will be in the year 1835, according to such terms and regulations as may be agreed upon between the said parties: Provided always nevertheless, that if the said The Philadelphia, Germantown and Norristown Rail-road Company, their successors or assigns, shall and do, well and truly pay, or cause to be paid to the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage and Joseph P. Norris, Jr., their heirs, executors, administrators or assigns, or the survivors or survivor of them, and the heirs, executors, administrators or assigns of such survivors or survivor, and the respective lenders hereinbefore referred to, their respective executors, administrators or assigns, the several sums of money which have been or which shall be by them respectively lent, the whole not exceeding the said sum of $300,000, according to the terms of said loan aforesaid, on the 1st day of May, which will be in the year 1843; or if they the said respective lenders, their executors, administrators or assigns, shall and do, at any time prior to the 1st day of May, which will be in the year 1838, convert the same into capital stock of the said company as hereinbefore said, whereby the debt to such respective lenders, their executors, administrators or assigns, will become extinguished or redeemed; and if the said The Philadelphia, Germantown and Norristown Rail-road Company, their successors and assigns, shall and do well and truly pay, or cause to be paid to the said respective lenders, their executors, administrators or assigns, the interest on the sum or sums loaned by them aforesaid, or to be loaned, accruing or to accrue, according to the terms of the said loan hereinbefore set forth and more particularly mentioned in the certificates of said loan to be issued or issued, without any fraud or further delay and without any deduction, defalcation or abatement to be made of anything for or by reason of any taxes, charges or assessments whatsoever on the estate, property and premises hereby granted and conveyed, that then and from thenceforth, as well this present indenture, as the estate and title hereby granted shall become void and of no effect, anything hereinbefore contained in anywise to the contrary notwithstanding."

The following is the conveyance of 22d of March 1839:

"Whereas, on the 18th of May, in the year 1833, the Philadelphia, Germantown and Norristown Rail-road Company, did execute an indenture of mortgage, of all their estate, real and personal, to Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis, John Savage and Joseph P. Norris, Jun., their heirs, executors, administrators and assigns, and the survivors and survivor of them as is in said indenture more fully expressed, in trust for certain purposes, which indenture is recorded in the office for the recording of deeds for the city and county of Philadelphia, in Mortgage Book, A. M., No. 16, page ——, &c., on the

25th of May 1833, and in said indenture it was covenanted by the parties ' that they the said The Philadelphia, Germantown and Norristown Rail-road Company shall, and will from time to time, and at all times hereafter, so often as they shall become the owners of any other estate, or estates, or property, real or personal whatsoever, by good and sufficient conveyances and assurances, convey and assure the same to the said parties of the second part,' as therein further expressed, ' upon the trusts and for the uses and purposes, and upon the terms and conditions in this present indenture declared and contained, so that the same, and every part thereof, shall become and be security to the said lenders, their executors, administrators and assigns, in like manner as the estates and property herein and hereby conveyed ;' and whereas the President and Managers of the said The Philadelphia, Germantown and Norristown Rail-road Company, did on the 20th of March 1839, pass a resolution, directing that the property and estate, real and personal, acquired since the 18th of May 1833, of the said company, by good and sufficient conveyances should be granted and conveyed to Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis and Joseph P. Norris, Jun., surviving mortgagees in trust, in the aforesaid indenture of mortgage, in trust to and for the purposes mentioned in the said indenture, according to the provisions thereof, and that possession of the said personal property be delivered to the said trustees forthwith : Now know all men by these presents, that the said The Philadelphia, Germantown and Norristown Rail-road Company, in pursuance of the above recited covenant, in the said indenture of mortgage contained, and the resolution aforesaid, for and in consideration of the premises, and of the sum of one dollar, to them paid at or before the ensealing and delivery hereof, the receipt whereof, from the herein named trustees, is hereby acknowledged, have granted, bargained, sold and assigned, and by these presents do grant, bargain, sell and assign to the said Jacob Ridgway, Edward Coleman, Joseph R. Ingersoll, Hosea J. Levis and Joseph P. Norris, Jun., their executors, administrators and assigns, and the survivors of them and the survivor of them, (the said John Savage being deceased,) and the executors, administrators and assigns of such survivors and survivor of them, all the engines, cars, horses, carriages, tenders, iron, wood, machinery and machines for transportation, furniture, stock on the road and in the depôts and elsewhere, and all personal and moveable property of every kind and description whatsoever, belonging to the said The Philadelphia, Germantown and Norristown Rail-road Company, and by them acquired since the 18th of May 1833, (a schedule whereof is hereto annexed,) to have and to hold the same, in trust to, and for the uses, intents and purposes expressed and contained in the indenture of mortgage hereinbefore recited, which by refer

ence thereto will more fully and at large appear, and in actual possession, according to the terms of the resolution aforesaid."

The main question was, whether the conveyance of the 22d of March 1839, was void against judgment creditors for want of recording under the Acts of Assembly relating to the recording of assignments fŏr the benefit of creditors.

BURNSIDE, President, charged as follows, viz.:

"In 1833 this company wanted to raise funds to complete the road. The legislature, to enable them to perfect this valuable improvement, passed a supplement, enabling the company to increase their capital stock, not to exceed 16,000 shares of $50 each, and the proviso to the second section of the Act declares, 'that the said company shall have the power to borrow money on loan, to enable them to finish their works, and to give mortgages, certificates or other evidences and securities for the payment thereof. The same to be convertible or not convertible into stock, as shall be agreed on between said company and the lender or lenders.' It would seem from the evidence, that in the spring of 1833, and prior, the company were without funds to complete the road. Under the second section of the Act to which the court have referred, passed the 30th March 1833, proposals were issued for a loan of $250,000, with the privilege of increasing it to $300,000. The interest on this loan was to commence from the day of payment. It was to be six per cent., and the interest was payable semi-annually on the 1st of May and November, in each year.

It is evident that James R. Wilson and others subscribed largely to this loan, and Jacob Ridgway and others agreed to become trustees, and accepted a mortgage on the 18th of May 1833, on the road of the corporation in trust for the subscribers of this loan. The mortgage recites that upwards of $250,000 of the loan was subscribed, and that the company had a right to increase it to $300,000. To secure the repayment of this loan and the interest semi-annually, the company gave a mortgage on 'all and singular the lands, buildings, works, tenements and hereditaments, goods and chattels, and estate, real, personal and mixed, whatsoever and wheresoever of the said Philadelphia, Germantown and Norristown Rail-road Company, and all the tolls, issues, income and profits of the said company, from and after the 1st of May 1835, reserving to the company a sum sufficient to defray the expenses of the administration of the affairs of the company, and to pay for the necessary repairs of the road,' &c. A sufficient sum was subscribed to complete the road so far as to open it for transportation. The road was in operation and open for transportation for some years prior to the spring of 1839; the precise length of time does not appear. After deducting expenses, the tolls did not raise a sufficient sum to meet the interest on the loan of 1833; and on the 22d of March 1839, the company executed a deed under their seal, to the trustees in the mortgage. This conveyance recites the

[Ridgway v. Stewart.]

mortgage. You will observe that by this deed the company granted, bargained, sold and assigned, 'all the engines, cars, horses, carriages, tenders, iron, wood, machinery and machines for transportation, furniture, stock on the road, and in the depôts, and elsewhere, and all personal and moveable property of every kind and description whatsoever, belonging to the said Philadelphia, Germantown and Norristown Rail-road Company, and by them acquired since the 18th of May 1833,' with a schedule annexed; 'to hold in trust for the uses, interests, and purposes expressed and contained in the indenture of mortgage before recited.' The schedule includes the property sold by Sheriff Stewart on the execution of Michael Wilt.

The defendant's third point; 'The deed of transfer of 22d of March 1839, with the inventory, if under any circumstances it would be operative as a conveyance of the personal property of the company, is null and void against creditors, because it was not recorded within thirty days, and no right of property passes to the plaintiff under it.'

Upon a careful examination of the Acts of 1818 and 1836, and of the cases of *Englebert* v. *Blanjot*, (2 *Whart*. 240), and *Flanagin* v. *Wetherill*, (5 *Whart*. 280), we are unable to come to any other conclusion than that this deed of the 22d of March 1839, comes within the statutory enactments, and within those decisions. The ingenious argument of the plaintiffs has not been able to satisfy us that this deed is valid against creditors, without being recorded. The Chief Justice says that the Act of 1818 is not only remedial but beneficial, and consequently to be liberally construed in suppression of the mischief. In the late case, Judge Sergeant says, it is sufficient that it is for creditors to bring it within the reasons for the passage of the Act of the 24th of March 1818. Was not this an assignment for the benefit of creditors? Most assuredly it was, and was so intended. It is said it did not vest the right absolutely in the personal estate of the company. This is true, but in our judgment, it increased the necessity of having the deed placed on record. We see no reason, nor any use in the Act, if this deed is not within it.

The result is, that the Act of 1818, not being regarded by the trustees, the assignment did not vest the property so as to bar the right of the plaintiffs to take it in execution."

The plaintiffs excepted to the opinion of the court.

Error assigned:

The court erred in charging the jury that the conveyance of 22d of March 1839 did not vest the property in the plaintiffs, so as to bar the right of a judgment creditor to take it in execution, the conveyance not having been recorded within thirty days.

This case was argued at December term 1841, by the same counsel who now re-argued it.

[Ridgway v. Stewart.]

*Miles*, for plaintiff in error. The paper of the 22d of March 1839, is not an assignment within the Act of 24th of March 1818, sec. 5 (*Sm. L.* 131); it therefore needed not to have been recorded within thirty days. The Act contemplates an absolute convey-ance without any reservation of right or interest in the grantor, and not a deed of mortgage or pledge merely. Assignment means an absolute transfer. 2 *Blac. Com.* 326, 327; *Thom. Coke* 566; 10 *Watts* 244; 1 *Rawle* 171; 5 *Serg. & Rawle* 284; 6 *Mass.* 422; 12 *Ib.* 300; 10 *Johns.* 389. An assignment or mortgage of per-sonal property may be by parol. 4 *T. R.* 690; 4 *Taunt.* 326.

*Freedley, contra,* contended that the mortgage did not pass the right of property so as to enable the trustees to maintain trespass. The mortgage should have been recorded. 5 *Whart.* 280.

The opinion of the Court was delivered by

KENNEDY, J.—The court below conceiving the deed of the 22d of March 1839, under which the plaintiffs claimed the right of possession to the goods in question to be an assignment of goods made by an insolvent debtor in trust for the benefit of his credit-ors, embraced by the 5th section of the Act of Assembly of the 24th of March 1818, entitled " an Act to compel assignees to set-tle their accounts, and for other purposes," (*Pamph. L.* 287,) in-structed the jury that it was void as against the defendants, be-cause it was not recorded in the office for recording of deeds in the county where the party making the deed resided, within thirty days after its execution. The section of the Act here referred to, declares " that all *assignments* so as aforesaid to be made and exe-cuted, which shall not be recorded in the office for recording of deeds in the county in which such assignor resides within thirty days after the execution thereof shall be considered null and void as against any of the creditors of the said assignor." The assign-ments here designated by the words " so as aforesaid to be made and executed, which shall not be recorded," &c., are thus described in the first section of the Act, " any *voluntary assignment* of his (the debtor's) estate, real, personal or mixed, or any part thereof to any person or persons *in trust for the use of his creditors,* or *in trust for the use of such person or persons to whom such assignment may be so made, and other creditors of the said assignor,* it shall and may be lawful for the Court of Common Pleas of the proper county, and they are hereby authorized and required, on the appli-cation of any of the creditors of such assignor, at any time *after two years from the time such assignment shall have been made,* to issue a citation to such assignee, &c., commanding him, &c., to appear at a time to be appointed by the court and settle his ac-count," &c. It is perfectly plain from the language just recited, that the assignments required by the 5th section of the Act to be recorded within the thirty days, are those absolute transfers made

by debtors, in embarrassed or insolvent circumstances, of their estates to trustees for the benefit of their creditors, that is, for the purpose of being turned into money and applied by the trustees to the payment of the debts owing by the assignors.

But the deed of the 22d of March 1839, under which the plaintiffs claim, is an entirely different instrument. It is a *mortgage* of the goods described in it, and not an *assignment* or *absolute* transfer or conveyance thereof, but *conditional* merely. In other words, a pledge of the things therein mentioned as a security for the payment of the money therein specified, according to the stipulation therein contained. The two instruments are very different from each other in their nature; the one is *an absolute* and *indefeasible* conveyance of the subject matter thereof, whereas the other is only *conditional* and *defeasible*. Consequently the authority and right derived from the two instruments to the grantee, are very different. Indeed it would be difficult, if not wholly impracticable, to apply to mortgages of either goods or lands, all the various provisions made by the Act of the 24th of March 1818, in regard to the assignments therein mentioned. For instance, the Court of Common Pleas of the proper county is authorized and required, upon the application of any of the creditors, after two years (which is reduced to one year by the Act of the 14th of April 1828, on the same subject,) from the execution of the assignment, to cite the assignees to appear and settle their account of the execution of the trust; and that an assignment made since the 14th of April 1828, allowing more than a year for executing the trust, was void, was declared by this Court, because contrary to the spirit and meaning of those Acts. *Sheerer's Assignees* v. *Lautzerheiser*, (6 *Watts* 543). Now it seems impossible to apply this principle of these Acts to mortgages, without making every debt, to secure the payment of which a mortgage is given, payable within a year after its execution. But this would be an utter surprise upon everybody; for it has never before, I think, entered into the mind of any one, notwithstanding the passage of these Acts of Assembly, to conceive, that as long time could not be given for the payment of a debt secured by mortgage as the parties should choose to agree on. If such a principle be applicable to mortgages on goods given to secure the payment of debts, it must be equally so to mortgages on lands or real estates for a like purpose, because the Acts of Assembly do not extend to or embrace the one more than the other.

It is perfectly manifest, therefore, that if the same principle be applied to mortgages that has been, under these Acts, to assignments made for the benefit of creditors, the whole law, as it has ever been understood, in relation to mortgages, will be entirely changed, and every one will be completely amazed to learn that it is so, without any previous intimation of it from the legislature. For, I think, it may be said with great truth, as well as propriety,

that there is nothing either in the language of the Acts of Assembly on this subject, or in the provisions contained therein, which tends in the slightest degree to show that the legislature intended to embrace mortgages given for any purpose whatever. And one of the first rules which we have for the interpretation of the Acts of the legislature is well adapted to advise the community of every change that is intended to be made in the law of the State, so as to prevent any individual from being deluded or taken by surprise in respect to what the law is at any particular period. The rule I allude to is this, that the words of the Act are generally to be understood in their usual and most known signification; not so much regarding the propriety of grammar as their general and popular sense. 1 *Bl. Com.* 59. Regarding, then, the words of the Act of Assembly, on this point, in their usual and most known signification, or in their general and popular sense, or even in their grammatical and legal sense, there does not appear to be any good ground for holding that mortgages given, upon either real or personal estate, to secure the payment of moneys or debts, were intended by the legislature to be embraced within the 5th section of the Act of the 24th of March 1818. The court below, therefore, erred in charging the jury that the deed of the 22d of March 1839 was void, because not recorded as deeds of assignment are required by the terms of that section.

Judgment reversed, and a <em>venire de novo</em> awarded.