## Peters *versus* Light *et al.*

1. Middleton, the owner of ironworks being hopelessly insolvent, by deed reciting that by an assignment for his creditors or by proceedings in bankruptcy, his creditors, except mortgage-creditors, could not hope to receive anything from his estate, but believing that if his creditors would take his ironworks, &c., and work them, his debts might be paid, &c., transferred all his estate to Light and his successors who might be elected by his creditors, in trust to carry on the ironworks, manufacture and sell the iron so long as the creditors might determine it to be their interest to do so, and until the debts should be paid, and when the creditors should determine, to convert the estate into money and distribute it amongst them, &c. The trustee took the estate under the deed, advanced money and made a large quantity of iron at the furnaces of the assignee. *Held*, that this being the product of the capital and labor of the trustee, a judgment-creditor of the assignor, who did not assent to the arrangement, could not seize the iron so made on an execution on his judgment.

2. The property assigned enured to the benefit of all the creditors, in proportion to their claims, which would not be invalidated by any attempted preference.

3. The stipulation that the trustees should manufacture iron so long as the creditors should determine it was their interest to do so, was void as against non-assenting creditors.

4. Such stipulation did not hinder or delay creditors; they could sell the assigned property as if the assignment had not been made.

May 23d 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Dauphin county:* No. 78, to May Term 1874.

This was an issue under a sheriff's interpleader, to August Term 1873, in the court below, in which Benjamin G. Peters was the plaintiff and Felix Landis and Andrew Light were defendants.

The circumstances in the case, so far as necessary to understand the questions decided in the Supreme Court, are as follows:—

Richard A. Middleton was the owner of ironworks and was largely indebted. Amongst other debts was a bond with warrant to confess judgment, dated July 12th 1870, for $10,000, to John W. Middleton; this bond was assigned to Benjamin G. Peters.

On the 21st of October 1871, Richard A. Middleton executed a deed to Andrew Light, Felix Landis and John J. Nissley. The deed recited that Middleton had "become involved in pecuniary embarrassment, and is now so heavily indebted that his creditors (other than those holding mortgage security for their claims) cannot hope to realize anything on their claims, either under a voluntary deed of assignment for the benefit of creditors, or under proceedings in bankruptcy, if his estate was distributed in that way; but it is believed if his creditors take his furnace and other estate, real and personal, in hand, and work it, the debts may be all paid, and most of the creditors have already agreed to try this experiment."

26 P. F. SMITH—19

[Peters *v.* Light.]

In consideration of the premises and of one dollar, Middleton conveyed to Light, Landis and Nissley in trust: " A certain anthracite furnace and other real estate and personal property, situated and being at Union Deposit, * * * together with all the other real and personal estate of every kind whatsoever—except as hereinafter excepted—of the said Richard A. Middleton, wheresoever the same be situate, * * * excepting and reserving only the household furniture of the said assignor, and such additional personal property as is exempted by law from levy and sale, if the former does not cover that amount. To have and to hold the property * * * so assigned as aforesaid unto the said Andrew Light, Felix Landis and John J. Nissley, * * * and their successors in the said trust, who may from time to time be elected by the creditors of the said assignor; the said trustees and their successors in office shall work the furnace and carry on the business of manufacturing iron and sell the same, so long as the creditors may determine it to be their interest to do so, until all the debts other than mortgage-debts are paid, and these also if the creditors so determine, with interest; and whenever the creditors shall determine that the estate so assigned shall be wound up, the same shall be converted into money by public sale, as speedily thereafter as may be consistent with the interests of the creditors, among whom the proceeds, after deducting expenses, shall be distributed *pro rata* according to the amount of their respective claims; the net earnings of the estate and income thereof shall also be applied, from time to time, to the payment of the debts of the assignor in the same manner. The creditors themselves to have the right to determine by vote, graduated by the amount of their respective claims, or otherwise, as they may agree, when the estate so assigned shall be converted into money, when new trustees shall be appointed, and all other matters pertaining to the management of the assigned estate. The said assignors shall be credited with all net earnings while the furnace is worked, and with the net proceeds of the sale of the assigned estate, if the same will be sold, by the creditors severally on their respective claims, as such payments are or may be made to them, from time to time, by the said trustees or their successors in the trust."

Nissley declined to act under the deed of trust; the other two trustees took possession of the property, and continued to operate the ironworks and manufacture iron for about eighteen months.

A number of the creditors by writing agreed that the trustees should carry on the business under the terms of the deed of trust.

At the time of making the deed, Middleton had scarcely any stock to run the furnace; his personal effects were under execution; were soon after sold by the sheriff, and were all purchased by the trustees, to be used in carrying on the business.

[Peters v. Light.]

After the conveyance, the trustees continued the business of making iron at their own expense and on their own credit. Iron was sold from time to time as made; their advances in part repaid, and the money paid by them for the property bought at the sheriff's sale repaid.

Peters had judgment entered on the bond from Richard A. Middleton to John W. Middleton, and assigned to him (Peters); execution was issued on the judgment, and levy made March 20th 1873 on 900 tons of pig metal, which had been manufactured by the trustees after the execution of the deed of trust, as the property of Richard A. Middleton. The levy was also upon other personal property, which Richard A. Middleton passed under the deed of October 21st 1871. Neither John W. Middleton, nor Peters, his assignee, acquiesced in the deed of trust or did anything to confirm it. Notice was given to the sheriff that the property levied on belonged to Light and Landis, the trustees. About 300 tons of this iron were released from the levy and sold by the trustees.

Upon the application of the sheriff, an issue was framed, September 16th 1873, under the Sheriff's Interpleader Act, "Benjamin G. Peters v. Andrew Light and Felix Landis, assignees for the benefit of creditors of Richard A. Middleton."

The declaration was in the usual form on a wager, that the property in the goods levied on was not in the defendants.

The defendants pleaded that the property was in them.

The plaintiff's points and their answers were as follows:—

" 1. If the defendants, at the time the sheriff levied upon the property in question, claimed the absolute ownership thereof, as assignees under the deed of assignment from R. A. Middleton, as set forth in their notice to the sheriff, given in evidence, they cannot now upon the trial set up a limited or qualified ownership or title thereto, nor claim to hold said property to secure them for advances made and liabilities incurred in its manufacture, but must succeed, if at all, by establishing their title under the claim of which they compelled the sheriff to abstain from selling, and forced the plaintiff to the trial of this issue."

Answer: " As we understand the first point, it might be correct in law if sustained by the facts.

" If a man has a mere lien on property which might be discharged by payment on the part of the creditor, about to make or having made a levy, it would be illegal to set up an absolute claim of ownership under the Interpleader Act, as the plaintiff in the execution would probably, in consequence of the character of the claim, neglect and be prevented from making a tender of the sum due. But as we understand this notice, the character of the defendants' claim is fully set forth. They say that they claim the property partly by sheriff's sale, partly by assignment from Richard

A. Middleton, and but little of it came through that source, and also because they manufactured it themselves. Therefore it is sufficient if they make good their title by either of those means. Whatever title they establish by either of those sources will be sufficient, or they may make part good by one, the other by a different ownership, general or special."

" 2. The deed of assignment given in evidence by the defendants, and under which they claim, dated October 21st 1871, is fraudulent in law, because by its very terms it tends to hinder, delay and defraud creditors, and is voidable by a non-assenting creditor of the assignor, who may avoid it by issuing execution and levying upon the property assigned."

Answer : " The deed of assignment from Middleton and wife we consider good and valid. It is very certain that the parties did not intend to make a general assignment for the benefit of creditors, but the instrument operates as such according to adjudicated cases ; therefore it cannot operate as a fraud. Also it could not tend to delay, hinder or defraud creditors, as there was no property out of which the creditors could be defrauded. The personal property in existence was all sold by the sheriff, independent of the deed of assignment. All of the iron now in controversy was created by the assignees with their own money or credit ; no part of it belonged to Middleton, and the real estate had liens on it by mortgages and judgments to its full value, and nothing done by these parties prevented the creditors from selling it when they thought proper."

" 3. Said assignment is fraudulent in law and voidable, because under the trusts declared therein the assignees cannot be compelled by an individual creditor to settle up the trusts within the time contemplated by the Acts of Assembly relating to trusts for the benefit of creditors, but are expressly authorized to carry on the business so long as a majority of the creditors may desire."

Answer : " It matters not what form the deed assumed if it was a valid assignment for the benefit of creditors. Any one interested in the estate as a creditor could compel a settlement of the trust as soon as the year allowed by law had expired."

" 4. If the said deed of assignment, upon its face, contains provisions that tend to hinder, delay and defraud creditors, no subsequent acts of the assignor or assignees can give it validity as against a non-assenting creditor ; nor can its validity in any way depend upon the amount or value of the property which passed under it, or upon the nature or amount of the encumbrances to which the same was subject, and that all the evidence admitted on these points and excepted to should be withdrawn from the consideration of the jury."

Answer : " We can see nothing in the writings, or the evidence in the case, which tends to delay, hinder or defraud the creditors of Richard A. Middleton. We have already said that the deed

[Peters *v.* Light.]

was a good assignment for the benefit of creditors under the Act of Assembly; and even if we are in error on that subject, the arrangement has no tendency to delay, hinder or defraud any creditor; they could proceed against the real estate without let or hindrance, and, as we understand the evidence, there was no personal property belonging to Middleton which came into the defendants' hands unless by judicial sale, except, perhaps, a few old railroad cars of little value and one day's supply for the furnace."

"5. If the jury should believe from the evidence that, at the time the levy was made under plaintiff's execution, there was sufficient property in the hands of defendants to reimburse the expenses and liabilities incurred by them as assignees, and to satisfy said executions, the plaintiff is entitled to recover in this issue, even if the court should hold that said defendants may lawfully claim in this issue such reimbursements."

Answer: "This point answered in the negative. Even if the deed referred to cannot operate as a valid assignment under the statute; but if the defendants, with the assent of the mortgage and other lien-creditors, took possession of the furnace with the assent of Middleton, under an arrangement to work it for the benefit of his creditors, themselves among others, got the personal property by purchase and carried on the business at their own expense, they are entitled not only to be reimbursed their outlays, but also be repaid their debt, before being obliged to give up the property made by themselves, and all of the money made by their labor and management must be divided among all of the creditors (themselves included) in proportion to the amount of their respective debts, and there is nothing illegal in such an arrangement under the facts in evidence in this case, unless there was evidence of actual fraud, which was not pretended."

The court charged also :—

"That the deed of Middleton was a valid assignment for the benefit of their creditors, for the reasons there given, and that there was nothing in the writings or disclosed in the case, which would amount to a fraud in law; that, therefore, there was nothing to destroy the defendants' title to the property levied, and which was in their possession at the time."

The verdict was for the defendants.

The plaintiffs took a writ of error, and assigned for error the answers to the points and the portion of the charge above given.

*B. F. Etter, H. M. Graydon* and *J. W. Simonton*, for plaintiffs in error.—The provisions in the deed of assignment tended to hinder, delay and defraud creditors; it contemplated an indefinite continuance of the trust and put it out of the power of creditors, less than a majority, to compel a settlement of the estate: Sheerer *v.* Lautzerheiser, 6 Watts 543; Ridgway *v.* Stewart, 4 W.

& S. 392; Adlum *v.* Yard, 1 Rawle 170; Whallon *v.* Scott, 10 Watts 237; Mitchell *v.* Stiles, 1 Harris 306. The trusts in the deed are stamped upon it, and all who take under the deed, must take subject to the trusts; and as more than a year is allowed under the deed for a settlement, it is in conflict with the statute. The assignor, assignee and creditors assenting are volunteers: Perry on Trusts, sect. 24, 597; Murphy's Appeal, 6 W. & S. 226. A creditor taking under a deed is bound by its stipulations, unless they were such as he was not bound to accept, and in such case the deed is invalid: McClurg *v.* Lecky, 3 Penna. R. 83; Irwin *v.* Keen, 3 Whart. 347; Thomas *v.* Jenks, 5 Rawle 221; Hennessy *v.* Western Bank, 6 W. & S. 312; In re Wilson, 4 Barr 448; and Johns *v.* Bolton, 2 Jones 339. The deed is invalid because it requires as a condition for receiving any benefit under it that the creditor should become a partner in manufacturing iron: Owen *v.* Body, 5 Ad. & E. 28; Janes *v.* Whitbread, 11 C. B. 406; Edwards *v.* Tracy, 12 P. F. Smith 374; Bullen *v.* Sharp, L. R. 1 C. P. 109. The deed containing provisions tending to hinder, delay and defraud creditors, no subsequent act of assignor or assignee could give it validity: Mitchell *v.* Stiles, 1 Harris 306. It is not material whether the assignor had, *in fact*, property which did not pass by the assignment; if the deed did not contemplate that such property, if he had it, should pass, it is invalid: Thomas *v.* Jenks, 5 Rawle 221; Hennessy *v.* Western Bank, 6 W. & S. 312; In re Wilson, 4 Barr 450; Fassitt *v.* Phillips, 4 Whart. 398; Garrison *v.* Monaghan, 9 Casey 232. An assignment cannot protect property from creditors unless it be recorded: Blabon *v.* Lewis, 3 Phila. R. 454. The iron manufactured by the trustees after the deed, being held by virtue of it, was as if it had been in existence at the date of the deed: Lunn *v.* Thornton, 1 M., G. & S. 379; Railroad *v.* Woelpper, 14 P. F. Smith 366. The assignees having claimed an absolute ownership in the goods levied on cannot defend on a qualified ownership: Meyers *v.* Prentzell, 9 Casey 482; Stewart *v.* Wilson, 6 Wright 450; Vandyke *v.* Rosskam, 17 P. F. Smith 334; Bissell *v.* Steel, Id. 443.

*J. Funck*, for defendants in error.—The trustees were the mere representatives of the assignor for the distribution of his estate: Fulton's Estate, 1 P. F. Smith 204. Such trusts do not depend for their validity on statute; they have their foundation in the common law: Beck *v.* Parker, 15 P. F. Smith 264. Assignors may, in the deed, reserve part of their property: Knight *v.* Waterman, 12 Casey 258; Miners' National Bank of Pottsville, 7 P. F. Smith 193; Watson *v.* Bagley, 2 Jones 164; Ashhurst's Appeal, 10 P. F. Smith 321; Lucas *v.* Sunbury & Erie Railroad Co., 8 Casey 464; Bittenbender *v.* Sunbury & Erie Railroad Co., 4 Wright 275. To make persons partners, they must participate

[Peters v. Light.]

directly in the profits: Edwards v. Tracy, 12 P. F. Smith 380. A trust will be sustained if possible without regarding strict technicalities: Perry on Trusts, sect. 585. The trust for benefit of creditors is good, although no bond or inventory be filed: Heckman v. Messinger, 13 Wright 473; Klapp v. Shirk, 1 Harris 589. The deed if voidable was good until impeached: Burke's Estate, 1 Parsons Eq. 473. Everything done under the deed in good faith is to be considered good until the deed is declared void: Weber v. Samuel, 7 Barr 521; Seal v. Duffy, 4 Id. 274; In re Wilson, Id. 431; Okie v. Kelly, 2 Jones 323; Wakeman v. Grover, 4 Paige Ch. R. 47. If trustees have made advances or payments, they may hold the trust property until they are reimbursed: Perry on Trusts, sect. 593; Hand v. Blake, 3 Beavan 234.

Mr. Justice MERCUR delivered the opinion of the court, July 2d 1874.

Although several errors are assigned, yet the only question urged upon the argument relates to the iron manufactured by the defendants after the assignment by Middleton to them.

So far as the assignment sought to prefer a certain class of creditors in the property assigned, its provisions cannot be enforced. The assignment must be held to inure to the benefit of all the creditors in proportion to their respective demands: Act of 17th April 1843, § 1. It is not invalidated by this attempted preference: Law v. Mills, 6 Harris 185; Worman v. Wolfersberger's Executors, 7 Harris 59. The other clause in the assignment, stipulating that the assignees shall carry on the business of manufacturing and selling iron, "so long as the creditors may determine it to be to their interest to do so," is clearly invalid as against the creditors of the assignor who did not assent thereto: Sheerer v. Lautzerheizer, 6 Watts 543. Its effect, however, was not to hinder or delay such creditors. They were at liberty to proceed and sell any of the property assigned, with like effect as if the assignment had not been made. The assignment does not indicate any fraudulent intent. In law, however, it bound no creditor who did not assent to its terms. Hence the plaintiff had an undoubted right to seize in execution against Middleton any of the property covered by the assignment.

The iron subsequently manufactured by the defendants stands upon a different footing. It was never the property of Middleton. It was the product of the capital and labor of the defendants. The fact that it was made at the furnace of the assignor did not give him any right of property therein.

The charge of the court, and answers to the points submitted, contain a correct exposition of the law.

Judgment affirmed.