LAWRENCE and others *against* THE FARMERS' LOAN AND TRUST CO., and others.

Since the enactment of the statute (1 *R. L.*, 374, § 5, 6, 2 *R. S*, 545), directing the manner in which mortgage premises shall be sold by virtue of a power, the sale must be at public auction after notice as prescribed by the statute to bar the right of redemption, notwithstanding the power is contained in the mortgage, and expressly authorizes the mortgagee on default to sell the premises at private sale to satisfy the debt.

In 1824 a conveyance was executed, in which it was recited that the grantor was indebted to the grantee, and that it had been agreed that he should, as a further security for the payment of the debt and of any further indebtedness which might accrue, convey the premises therein described upon the trusts specified in the conveyance, and by which the premises were granted upon the trusts: 1st. That the grantee should permit the grantor to enjoy the premises until default: 2d. On payment of the indebtedness to hold the premises to the uses which the grantor should appoint, and in default of such appointment to reconvey them to him or his heirs: 3d. On default in paying the indebtedness to sell the premises at public or private sale for cash or upon credit, and convey the same to the purchaser in fee and apply the proceeds after paying all expenses of executing the trusts to the payment of the indebtedness, rendering the surplus to the grantor or his heirs. The grantor died intestate in July, 1830, the indebtedness remaining unpaid; and the grantee took possession, and in 1833, sold the premises at private sale, without notice to the heirs or representatives of the grantor, and conveyed with full covenants as to title. On bill filed by the heirs against the grantee, and those deriving title under the sale; *Held*, 1. That the conveyance was a mortgage; and 2. That the right of redemption was not barred by the private sale made by virtue of the power.

ACTION commenced in the superior court of the city of New-York in October, 1853, by the heirs of John T. Champlin, deceased, to redeem premises alleged to have been mortgaged to the defendant, the Farmers' Loan and Trust Company, in 1824. The complaint stated the following facts: On the first of June, 1824, Benjamin Bailey was seized in fee simple of an equal undivided moiety of certain lands, situate at Harlem, in the city of New-York, in trust for the sole use and benefit of John T. Champlin. An

instrument bearing date on that day was executed by Bailey and Champlin under seal, to the Farmers' Loan and Trust Company by its then corporate name of The Farmers' Fire Insurance Company, a copy of which was annexed to the complaint. In this instrument Bailey was described as party of the first part, Champlin as party of the second part, and the Farmers' Fire Insurance Company as party of the third part. It recited that Bailey was seized of the undivided half of the premises therein described as trustee for Champlin, and that the latter was indebted to the party of the third part in the sum of $10,000 secured to be paid by his bond bearing even date, in the penalty of $20,000 conditioned for the payment of the $10,000 on or before the 1st of June, 1834, with interest to be paid semi-annually at the rate of six per cent per annum; and that it had been agreed that Bailey, " as a further security for the payment of the said sum of money and interest, and for the payment of any sum of money " which should or might be owing from Champlin to the party of the third part or their successors, should convey the moiety of the premises described, to the party of the third part " upon the trusts hereinafter particularly set forth ; " and thereby Bailey, in consideration of the premises and of $1 to him paid by the party of the third part and with the consent of Champlin, signified by his signing the conveyance as was therein stated, granted and conveyed the undivided one-half of the premises to the party of the third part, their successors and assigns upon the following trusts, viz : First, to permit Champlin, his heirs or assigns, provided he and they should pay all taxes and assessments imposed upon the premises, to have, hold, use, occupy and enjoy the same without impeachment of waste, so long as he or his executors, administrators or assigns should not make default in payment of the principal or interest secured by the bond, or in payment of any other debt then owing or which might thereafter accrue to the party of the third part; second, when, and

as soon as the said principal and interest and every other sum which might be owing from Champlin to the party of the third part should be paid to hold the premises to the uses and upon the trusts which Champlin, by writing under seal, should appoint, and in default of such appointment, then to release and reconvey the premises to Champlin or his heirs ; and lastly, in case default should be made in the payment of the principal or interest mentioned in the bond, or any other money which Champlin then owed or might thereafter owe to the party of the third part, to sell and dispose of the premises either by public auction or at private sale, and either for cash or upon credit, or for part cash and part upon credit, as the said party of the third part or their successors should deem most expedient; and to grant and convey the said moiety of the premises to the purchaser or purchasers thereof in fee simple, and to apply the price given for the same in payment of all expenses paid or incurred by the party of the third part, in or about the land, and in and about the performance of the trusts and towards the payment of the moneys mentioned in the bond according to its condition, and every other sum or sums of money which Champlin then owed or thereafter might owe to the party of the third part ; and if there should be a surplus, then the same to be paid to Champlin or his heirs.   The instrument further provided that Bailey was in no event to be held liable for the moneys mentioned therein.   This instrument was acknowledged by Bailey and Champlin and recorded in July, 1824, in the office of the register of the city and county of New-York.   Champlin died intestate on the 24th of July, 1830, leaving him surviving three daughters, viz : Penelope, Anna and Phebe, who were his only heirs and each of whom was then married.   In 1846, the marriage between Penelope and her husband was dissolved by a decree of the court of chancery.   During the same year the husband of Phebe died, and she has since departed

this life intestate, leaving children ; and in 1852 the husband of Anna died.

After the death of Champlin the company took possession of the premises, and having acquired title to the other moiety conveyed in November, 1833, the whole of the premises in fee to Alexander Hamilton. The conveyance was in the ordinary form of a deed of bargain and sale with full covenants as to title, and the consideration stated was $11,000. No demand was made by the company previous to the sale, of the heirs or personal representatives of ·Champlin for the payment of any amount, claimed to be due or owing to the company. The salè by the company was private and secret and without notice to the heirs or representatives of Champlin by advertisement, pursuant to the statute or otherwise. At the time of the sale there was due from Champlin to the company, the sum of about $3000 with interest thereon from 1824. The name of the company was in 1836, changed from the " Farmers' Fire Insurance and Loan Company " to " The Farmers' Loan and Trust Company. " Subsequent to the conveyance by the company to Hamilton, he conveyed to Knap & Kingsland, who conveyed portions of the premises to others.

The action was brought by one of the surviving daughters and the children of the deceased daughter of Champlin. The other daughter refused to unite with them, and she was made a party defendant with the company and the several grantees of the premises. The plaintiffs asked to be allowed to redeem the premises, offering to pay any amount which might be found due to the company.

The company demurred to the complaint, stating as a ground of demurrer, that it did not state facts sufficient to constitute a cause of action. The cause was heard at special term by Justice Hoffman, who held the demurrer well taken and dismissed the complaint. This judgment was affirmed by the superior court at a general term. The plaintiffs appealed to this court.

*Saml. Beardsley*, for the appellants.

I. The indenture of June 1, 1824, made by Benjamin Bailey and John T. Champlin to the Farmers' Fire Insurance and Loan Company, was a mortgage: (1.) The Revised Statutes have in certain respects changed the nature of mortgages (1 *R. S.*, 738, § 139), although not so as to affect any question in this case, even if the indenture had been made under those statutes. But it was made in 1824, and the law then in force must determine its character; (2.) A mortgage ordinarily contains a power to sell, although it is not indispensable that it should; for an indenture may be equally a mortgage with or without such a power. A party may mortgage his legal estate in lands and that in fee, for life or for years; so he also may an equitable interest therein; as in the common case of the mortgage of an equity of redemption. So lands conveyed to a trustee for the benefit of a married woman may be mortgaged by her, unless she is restrained from doing so by the conveyance to her trustee. The indenture may provide that the mortgagee shall be let into possession of the mortgaged premises, and for their sale to pay the mortgage debt, and a return of the surplus, if any, to the mortgagor, or that the occupation of the mortgagor shall not be disturbed and there may be no power to sell; but nothing of this nature will affect the character of the instrument so far as respects its quality as a mortgage, for every conveyance, assignment or other instrument transferring any such estate or interest, which the parties intend as a security for a debt, is a mortgage. (*Wilson* v. *Troup*, 2 *Cow.* 195; 1 *Pow. on Mort. by Rand*, 58, *and note b; ib.* 3, 4, 4 *a*, *and notes; ib.* 9 *ad and note* (1); 4 *Kent.*, *6th ed.* 144, *and note a*, 134, 143; *Demarest* v. *Wynkoop*, 3 *John. Ch. R.*, 144; *Essex* v. *Atkins*, 14 *Vez.*, 542; *Coote's Law of Mort.*, 238; 2 *Cruise's Dig. Tit.* 15, *Mortgage Ch.*, 1, §§ 11, 21; *Story's Eq. Jur.*, § 1018; *Henry* v. *Davis*, 7 *John. Ch. R.*, 42; *Slee* v. *The Manhattan Co.* 1 *Paige*, 56; *Flagg* v. *Munn*, 2 *Sum-*

*R.,* 490 ; *Hughes* v. *Edwards,* 9 *Wheat,* 489 ; *Glover* v. *Payn,* ⁊ 19 *Wend.,* 518 ; *Cary* v. *Rauson,* 8 *Mass.,* 159 ; *Holmes* v *Grant,* 8 *Paige,* 243 ; *Conway's Executors* v. *Alexander,* 7 *Cranch,* 237 ; *Clay* v. *Willis,* 1 *B. and Cr.* 364 ; 1 *Hilliard on Mort.,* 1, 4.)

II. A right to redeem premises mortgaged is incident to, and inseparable from every mortgage, until such right is released or canceled by the person entitled thereto, or is duly foreclosed or barred. No stipulation or agreement in the mortgage, or between the parties at the time of making it, can in any way destroy, impair or clog this right. (1 *Paige,* 56, *supra* ; 7 *John. Ch. R.,* 42, *supra* ; 2 *Cow.* 331, 332, *S. C.,* 1 *Mad. Ch.,* 414 ; *Goodman* v. *Grierson,* 2 *Ball and B.,* 274 ; *Crabb's Law of Real Prop.,* § 2262 ; 4 *Kent,* 6*th ed.,* 158 ; *Story's Eq. Jur.,* §§ 1013, 1015, 1019 ; 1 *Hilliard,* 42, *et seq.* ; *Coote on Mort.,* 21, 22.)

III. By the law of this state said right of redemption may be foreclosed or barred : (1.) In all cases, by the judgment or decree of a court of competent jurisdiction, whether the mortgage contains a power to sell or not ; (2.) Where the mortgage contains a power to sell, by a public sale of the mortgaged premises, after notice, as required by the law regulating such sales. Such a sale made in conformity with the requiremants of the statute, is, in this respect, equivalent to a chancery foreclosure (2 *R. S.,* 545, *Tit.,* 15 ; *Wilson* v. *Troup,* 2 *Cow.,* 195 ; *Vroom* v. *Ditmas,* 4 *Paige,* 526 ; *Jackson* v. *Henry,* 10 *John.,* 185) ; (3.) By lapse of time, twenty years, in analogy to the statute bar to a right of entry ; or the positive statute bar of ten years free from all disabilities. (*Demarest* v. *Wynkoop,* 3 *John. Ch. R.* 135 ; 2 *R. S.* 293, § 7, 301, § 52, 302, § 53 ; *Hughes* v. *Edwards,* 9 *Wheat.* 497.

IV. But in this case there has been no judgment or decree of any court whatever. Nor has there been any public sale of the mortgaged premises after notice as required by the statute Nor is the right to redeem barred by lapse of

time. When the mortgagees (the company) entered on the mortgaged premises, which was after the death of Champlin in 1830, and when they sold said premises to Hamilton in 1833, the three daughters of Champlin were all under the disability of coverture, which continued as to all of them until 1846, and as to one until 1852. Their right to redeem has, therefore, clearly not been barred by lapse of time. (*Demarest* v. *Wynhoop*, 2 *John. Ch. R.*, 135 ; *Slee* v. *Manhattan Co.*, 1 *Paige*, 48 ; *Proctor* v. *Cowper*, 2 *Vern.*, 377 ; *St. John* v. *Turner*, *Ib.*, 418 ; *White* v. *Ewer*, 2 *Vent.*, 340 ; *Price* v. *Copner*, 2 *Simon and Stu. Ch. R.*, 347 ; *Coote's Law of Mort.*, 518 ; *Sections of Revised Statutes before referred to.*)

V. The sale and conveyance of the mortgaged premises by the mortgagees (the company), to Hamilton in 1833, did not bar the equity of redemption which the heirs of Champlin then had. (*Colonial act of 19th March*, 1774 ; *Doolittle* v. *Lewis*, 7 *John. Ch. R.*, 50 ; *Act of 26th Feb.* 1788, *in* 2 *Greenleaf's Laws, N. Y.* 101, § 7, 102, § 8 ; *Act of April 6th*, 1801 ; 1 *K. and R.*, 482, §§ 5, 6 ; *Act of March 19th*, 1813 ; 1 *R. L.* 373, § 5 ; 374, § 6 ; 2 *R. S.*, 449, *Tit.* 15 ; *Broom's Leg. Max.*, 303, 307, 308, 309 ; *Burrill's Law Dic. Modus et Conventio, &c.*; *Story on Bailments*, § 32 ; *Hart* v. *Teneyck*, 2 *John. Ch. R.*, 99 ; *Chowning* v. *Cox*, 1 *Randolph's R.*, 310 ; *Ford* v. *Russell*, 1 *Free. Ch. R.* (*Miss*)., 49 ; *Turner* v. *Bouchell*, 3 *Har. & John.*, 99 ; 4 *Kent*, 6th ed., 190 ; 6 *Mad.* 10, *Anon.* ; *Bergen* v. *Bennett*, 1 *Cai. Ca. in Error* ; *Demarest* v. *Wynkoop*, 3 *John. Ch. R.*, 129 ; *Burnet* v. *Denniston*, 5 *Ib.* 35 ; *Jackson* v. *Clark*, 7 *John. R.*, 217 ; *Miller* v. *Hull*, 4 *Denio*, 104 ; *Benedict* v. *Gilman*, 4 *Paige*, 58 ; *Vroom* v. *Ditmas*, *Ib.*, 526 ; 1 *Hilliard*, 42 ; *Coote*, 21.)

VI. The defendants, The Farmers' Loan and Trust Company, although the mortgaged premises were conveyed by said company in 1833 to Alexander Hamilton, may now, by themselves alone, or in conjunction with their grantee or those who hold under him, proceed by a foreclosure complaint in the supreme court or by advertisement under the

statute, to foreclose the equity of redemption under said mortgage. (*Wilson* v. *Troup*, 2 *Cow.*, 195, 203, 205; *Opinion of Chan. Kent*, 211, 213, 219, 221, 224, 226, *argu-endo*, 230, 232; *Opinion of Woodworth J.*, 236, 238 : *Suther-land, J.*, 242.)

*Ch. O' Conor*, for the respondent.

I. A conveyance of lands to a creditor as security for a debt, with a power to the grantee to sell for the satisfaction of his demand, returning the surplus to the grantor, was, at all times, valid by the English common law (*Croft* v. *Powel*, *Comyn's Rep.*, 603, 607, 608; *Coventry's Note K to* 1 *Rand's Powell on Mortg.*, 13; *Coote on Mortg.*, 10 *to* 14, 124 *to* 130; *Ib. note a. to* 130 ; *Corder* v. *Morgan*, 18 *Vescy*, 344; *Clay* v. *Sharp*, *App. to Sugden on Vend.*, *No.* 14; *Jones* v. *Matthie*, 2 *Colyer's Ch. R.*, 465, *S. C. on Appeal*, 11 *Jur.*, 504; *Foster* v. *Hoggart*, 15 *Queen's B. R.*, 155; *Clay* v. *Willis*, 1 *B. and Cr.*, 364); 1. Such a power did not militate against the rule of equity which forbids the imposition of restraints upon the right of redemption, because it never could involve a forfeiture ; 2. Its validity has been fully recognized in this country. (*Recital in acts of March* 19, 1774, § 2 ; *Hilliard on Mortg.*, 90, *and note a*; *Dobson* v. *Racey*, 4 *Selden*, 216.)

II. Under such a power, the mortgagee could not, at common law, have obtained a strict foreclosure ; for a sale to himself, directly or indirectly, would have been voidable in equity. (*Michoud* v. *Girod*, 4 *How. U. S. R.*, 553 ; *Bergen* v. *Bennet*, 1 *Cases on Error*, 11, 13, 20.)

III. The statutes of this state concerning the foreclosure of mortgages by advertisement do not, in any degree, affect the present question : 1. Their original object was not to introduce a new law, but to remove all possible doubt. Nothing is withheld by them in consequence of an omission to comply with their requisitions, except the benefits which

they themselves conferred (*Act of Dec.* 12, 1753, 2 *Liv. & Smith*, 19; *Act of Mar.* 19, 1774; *Act of Feb.* 25, 1788, 1 *K. and Rad.*, 480; 1 *R. L. of* 1813, 375; 2 *R. S.* 545, § 1 *and onward*; *Notes*, 3 *R. S.*, 775, *second edition*; *Laws of* 1844, 530, § 4); 2. When they allowed a mortgagee to obtain by advertisement, a strict foreclosure, they did, *quo ad hoc*, introduce a new law. That was not attainable under an ordinary common law execution of the power of sale. 3. Considering the doubts which seemed to exist in the legislative mind, and the cautious phraseology employed in these statutes, they should not be extended beyond their terms They apply only to cases where the owner of the equity of redemption has granted a special power for the purpose of authorizing a sale "in due form of law." They evidently intended to deal with the well known instrument in common use, which always contained a power to this effect. (2 *Cow.*, 200; 7 *Johns. Ch. R.*, 35; *Ib.*, 45.) 4. The deed in question was not technically a mortgage, nor was it so according to common parlance. (2 *Blackstone's Com.*, 158; *Jenkins* v. *Row*, 11 *Eng. L. and Eq. R.*, 297; *Sampson* v. *Pattison*, 1 *Hare*, 533.) 5. The rule allowing a redemption in equity where an absolute conveyance is given as security for a debt, does not imply that such instruments are mortgages within the strict technical signification of that term, especially when used in a statute. (2 *R. S.*, 312, § 58; 1 *R. S.* 737, § 133.)

IV. If this deed could be brought within the words of the statute, the express consent of the grantor was a valid waiver for himself and his heirs of the privileges conferred by that statute, (*Wingate's Maxims*, 483; *Broom's Maxims*, 310; *Sprigg* v. *Bk. of Mt. Pleasant*, 10 *Peters*, 365; *Ex parte Crosby*, 8 *Cowen*, 119; *Racey* v. *Dobson*, 4 *Selden*, 217, *in point*; *Livingston* v. *Story*, 11 *Peters*, 388, 391; *Russell* v. *Southard*, 12 *How. U. S. R.*, 154; 5 *Hill*, 47.)

GARDINER, C. J.   If the deed executed by Champlin in 1824, was a mortgage, as the counsel for the complainant insists, the latter may claim the benefit of the rule "that a court of chancery will not permit a creditor, by mortgage, to obtain a collateral or additional advantage through the necessities of the debtor, beyond the payment of principal, interest and costs; and that equity will let a man loose from his agreement, and even against his agreement admit him to redeem a mortgage." (*Coote on Mor.* 11, *and case cited.*)   I have quoted the strong language of an elementary writer, because it is borrowed from the cases and indicates the settled policy of the law in our own country and in England.

But I do not understand that a power of sale granted by the mortgagor, at the time when the mortgage is made, conflicts with this policy or the rules established by courts of equity.   The object of the pledge is to secure a debt; to effect that purpose the right of disposition must exist some where, and be founded on the contract of the parties either express or implied.   A judicial sale is but the enforcement of the contract; one mode of appropriating the mortgaged property to the satisfaction of the debt.   The authority resulting from the contract which a court may exercise in behalf of one of the parties, the mortgagor may confer upon the mortgagee or a third person, it would seem, without any violation of principle.   A power to dispose of the property to satisfy the debt for which it is pledged, is not collateral; but like the right of redemption, inheres in the subject.   It is not in addition to the mortgage but a part of it, and the mode in which it may be exercised is as proper a subject of agreement *prima facie*, as the terms of the mortgage itself. Accordingly it has been held in England, notwithstanding the doubts of Lord Eldon, that such a power was valid. (*Croft* v. *Powell, Comyn R.,* 603; *Corder* v. *Morgan,* 18 *Vesey,* 344; *Mathie* v. *Edwards,* 2 *Colyer R.,* 465, *and same case before the chancellor.*)

Indeed it was conceded upon the argument that the power in this case would be sustained by the English courts, but that they would not permit it to be enforced whatever might be the stipulation of the parties, without notice to the mortgagor.

The right to create a power at the common law involved the right to regulate its exercise. This was the general rule. If powers of sale in mortgages formed an exception, it must be because the courts assumed to modify the contract of the parties by adding a condition which they thought unnecessary or burdensome. We have been referred to no case in which it has been determined that the parties were prohibited from contracting for a private sale of the mortgaged property, without notice to the mortgagor. Notice is frequently, perhaps generally required in the English conveyances. (*Coote on Mort.*, 124.) This, however, shows it to be the subject of stipulation, and the cases above cited strongly imply that notice may be waived by the agreement of the parties. (*Coote*, 124 *to* 128.)

But the more difficult inquiry is as to the effect of our statutes, which assume to regulate the exercise of these powers, and to define and establish the rights to be acquired under them. Did the legislature intend to abolish the right of private sale in all cases of mortgages of real property and confine the mortgagee to the remedy prescribed by the statute, or is that remedy cumulative leaving the rights of the mortgagee under the power of sale at the commonlaw unaffected in whole or in part?

It is apparent from the act of 1774 that the legislature, or others to their knowledge, entertained doubts whether sales under powers of this description by the mere act of the party to whom the power was granted, would extinguish the equity of redemption. It accordingly recites the inconvenience of allowing them to be impeached, and declares that the rights of *bona fide* purchasers shall not be defeated in favor of any person claiming a right of redemption in

equity with a proviso, saving the rights of prior mortgagees and creditors by judgment.   The same provisions are found in the act of 1788, together with one for the acknowledgment and recording of the power ; and it further directed that " every such sale" under a power contained in the mortgage should be at public auction after advertisement for the period therein provided.   The system of regulation thus established was in force when this mortgage or trust deed was executed ; and as to all its essential features, has been continued to the present time.   (1 *R. S.*, 373 ; 2 *R. S.*, 545.)   The provisions of these statutes and their whole policy are incompatible with the right of the parties to regulate the mode of sale under powers of this description by their own contract.   The statute adopts the power and assumes to regulate its exercise in a manner which its makers supposed would give effect to the mortgage security, while it guarded the mortgagor against oppression and protected the rights of other incumbrances.   The right of the state thus to legislate even as to existing contracts is unquestionable, so long as the remedy substituted for that provided by the parties was full and adequate.   But the two remedies are not concurrent.   The parties in this case, for example, have agreed that the sale may be private by which I understand a sale without notice.   The statute declares that " every sale" by virtue of such a power shall be public and after notice.   That both cannot be operative as to the same power, is obvious.   If, however, they are concurrent, the mortgagee may avail himself of the statute when for his advantage, which is thus, according to his election, made to supersede the conditions which the mortgagor annexed to the grant of the power, while the latter is not entitled as matter of right, either to the protection of his own grant or of the statute.   He may be burthened with the expense of one proceeding and deprived of the benefit of the other at the option of the other party to the contract.

It is impossible to suppose that the legislature contemplated this result. The law has always looked upon the mortgagor as the one who might, by his necessities, be driven to an improvident contract, and for that reason requiring protection. That the legislature, with full knowledge upon this subject, should enact a law for the exclusive benefit of the stronger party, is an anomaly that is not countenanced by its provisions or any subsequent authority.

Again, if the legal remedy is cumulative, the law practically would be useless. A mortgagee would seldom submit to the delay and inconvenience of pursuing the minute provisions of the statute when he could avoid both by proceeding under the power. The learned judge whose opinion is before us, assumes that full effect can be given to the statute by applying it to two classes of cases: First, where the power refers to the statute; and second, where it is general to sell on default of payment according to the provisions of the mortgage. The two classes, in fact, constitute but one since both depend upon the intent of the grantor of the power, the only difference being that in the first the intent is expressed, and in the other implied.

According to this view the statute remedy is neither cumulative or concurrent; it becomes operative only when it forms a part of the power granted by a reference to its provisions either express or implied. It furnishes a form of proceeding which the parties to the mortgage may adopt as they might any other formula, or depart from at pleasure. With all respect, I cannot but think that this construction in effect nullifies the law by making the regulations of the parties as to the remedy, paramount to those of the legislature upon the same subject. Another answer is found in the language of the various statutes to which reference has been made. Neither the act of 1813 or the Revised Statutes is limited to any one class of powers of this description, nor is the effect of this provision made dependent upon the recognition of the grantor of the power. The act of 1830,

which was in force when the premises in question in this suit were sold, in terms embraces " every mortgage containing a power to the mortgagee or any other person to sell the mortgaged premises upon default made in any con dition," &c. (2 *R. S.*, 545.) And lastly, the absence of all authority for the doctrine I have considered, is strong presumptive evidence against it. There is no adjudication sustaining it; and in all the cases presented in our courts, I cannot discover that it has ever been claimed that a foreclosure under the statute void for irregularity, might be sustained by showing that it was consistent with the conditions annexed to the exercise of the power of sale by the parties. (1 *Caine's Cases in Error*, 14; 7 *J. Ch. R.*, 15; 4 *Paige*, 58.)

My opinion, therefore, is that the statute was designed to include, and in terms does extend to all sales made in virtue of powers for that purpose contained in mortgages, except those directed by order of some judicial tribunal; and that the party availing himself of the power must consequently conform to the requirements of the statute in order to bar the equity of redemption.

The only remaining question is as to the character of the instrument in which the power in this case is found. It is claimed that it is not technically a mortgage. It is in form a trust deed. It however recites an agreement for the payment of money advanced or to be advanced to the *cestui que trust* by the corporation to which it was executed and for which his bond had been given, and that a conveyance should be made of the premises to the company upon certain trusts as security for such payment. Those trusts were that the debtor should occupy the premises until default made by him in the payment, &c.; second, upon such payment, the company to hold the land upon such trusts as the debtor should direct, and if no directions were given upon trust to convey to him or his heirs; and lastly, in case of default in payment of said bond upon trust, to sell the land at auction

*or private sale* for cash or on credit, and to convey the fee to the purchaser and apply the proceeds in payment of the debt and pay the surplus to the debtor or his heirs. Here are all the essentials of a mortgage. The rights of the parties secured by the ordinary instrument being designated in this case as trusts for their benefit respectively. In the common mortgage the fee is in terms conveyed to the mortgagee, subject to a defeasance upon the performance of the stipulated condition. In this instrument the fee is conveyed as *ancillary* to the trust which was to secure the payment specified; upon the performance of this duty by the *cestui que trust*, the trust would be extinguished by its own limitation, the object for which it was created being accomplished. If a reconveyance was necessary, which is doubtful, it would not alter the character of the security. In *Eaton* v. *Whiting* (3 *Pick.*, 484), and *Fox* v. *Channing* (1 *Rand.*, 306), the conveyances were upon express trust, similar to those in this deed and they were held to be mortgages (7 *Wend.*, 248 ; 6 *Dana*, 473 ; *Coote on Mort.*, 3d ed., 54, 55, *note a ;* 3 *Hill*, 100.)

The stipulation in this deed that the company would, after payment. hold the premises subject to such trusts as Champlin should direct or reconvey the same, is only indicative of the intention of the parties that the *cestui que trust* was in that event to become at least in. equity, the absolute owner of the land. *Jenkin* v. *Row* (11 *Law and Equity R.*, 298), *and Sampson* v. *Pattison* (1 *Hare*, 533), to which we are referred, do not decide that the deeds in those cases were not mortgages entitling the mortgagors to redeem.

In the first case the vice-chancellor said it was not a mortgage in the usual form, and in both it was held that the complainants had precluded themselves by the form of the trust from insisting upon a strict foreclosure, and that payment must be obtained in the manner pointed out by the security, namely, by sale. The cases proceed upon the ground that the mortgagee may limit his right by contract

at pleasure; and when he stipulates to sell, in order to realize his money, and the mortgagor insists upon the stipulation, he is precluded from asking a strict foreclosure although entitled to a decree for sale in pursuance of the trust.

I suppose a mortgagee may waive the right to invoke the aid of a court of equity for a strict foreclosure against the mortgagor in England or in this state. Courts have not as yet deemed him incompetent to surrender an advantage which the law would otherwise afford him, although they disregard the contracts of the mortgagor in restriction of his right to redeem.

I am therefore of opinion that the trust deed in question, although not in the usual form, is still a mortgage securing to the mortgagor the right of redemption, and that the sale being private and without notice, did not extinguish that right which still subsists, and may be enforced by the complainant.

The judgment of the superior court should be reversed with liberty to the defendants to withdraw their demurrer and answer the complaint if they shall be so advised.

CRIPPEN, J. It seems to me that no doubt can exist but that the conveyance by Bailey & Champlin to the company was nothing more or less than a mortgage. It was given to secure the payment of a debt due from Champlin to the company, and also any future indebtedness on the part of Champlin to the company. On the payment of the indebtedness, the property was to be reconveyed to Champlin or his heirs, or held in trust for him. In case of default the company was authorized to sell and convey, &c., and return the surplus money, if any should arise from such sale.

The instrument in fact contained every material element of an ordinary mortgage on real estate, with the addition of a power to dispose of the property at private sale. I have

3 KERN.—14

no doubt that the instrument was a mortgage, and must be so regarded in reference to the rights of the parties to this action.

The next question in the case is whether the sale and conveyance of the property to Hamilton by the company cuts off the right of redemption on the part of the heirs of Champlin. The sale was a private one, without notice to the heirs.

The right of redemption exists in every case of a mortgage, and cannot be barred, except by release or foreclosure or by lapse of time.

It should be remembered that the conveyance to the company nowhere expressly authorizes a sale of the premises without notice. The sale was authorized to be made either publicly or privately, but no authority is given to make the same without notice, and this I think could not be done.

In my opinion, the plaintiffs have a right to redeem the property upon equitable principles. Nothing exists to bar this right.

They were entitled to notice from the company of the contract of sale, before its consummation, in order that they might, if they chose to do so, pay up the amount due on the mortgage, and keep the property. If Hamilton took the conveyance without such notice, he did so subject to the right of redemption in the heirs of Champlin.

I think the judgment should be reversed, and judgment for plaintiffs on the demurrer, with leave to defendants to answer, on payment of the costs of the demurrer and of the appeal.

**Judgment reversed.**