60    93
131    47
60    93
47a 430
60    93
91a 4318
60    93
100a 4661

## SETH W. HARDIN
### *v.*
## NIAL S. OSBORNE.

1. DEED—*how defective certificate of acknowledgment may be cured.* A certificate of acknowledgment entitled simply "county of New York," is insufficient, failing to show the State in which the act was done, but is cured by the certificate of the county clerk that the commissioner was duly commissioned for the city, county and State of New York, residing in the county, and duly authorized, etc.

2. CONVEYANCE BY AGENT—*its effect.* If one take a deed absolute to himself, but for the benefit of his client, and afterwards disregards his client's interest, and sells without objection of the client, his deed gives title, and can not be impeached by third parties.

3. COLOR OF TITLE—*second conveyance of the same interest.* A deed by an assignee in bankruptcy does not give color of title, when it appears that the bankrupt has himself already parted with his title in trust under a special assignment, even though the date of acknowledgment is subsequent to the decree in bankruptcy.

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—*when deemed fraudulent.* While courts will sustain assignments preferring creditors, they are ever watchful to prevent conditions onerous, burdensome and discriminating, and which must result in giving the debtor control of a large part of the assigned property, and enable him to defeat the avowed purpose of the conveyance. Such conditions should always taint the instrument with fraud.

5. Thus, the reservation of a use or benefit to the grantor avoids the assignment.

6. Thus, where the deed of assignment excludes from its benefits all creditors residing at great distances, who do not signify their acceptance within a fixed time, which, under the circumstances, is unreasonably short, especially while relieving resident and preferred creditors from the necessity of any acceptance.

7. Thus, when unusual conditions and restrictions are imposed upon a trustee, delaying his action and dictating when and how he may sell, evidently intended to enable the debtor to control the execution of the trust.

8. ASSIGNEE—*excess of authority.* If the assignee is invested with power which the law would not give, and it is absolute and improper, the assignment must be held void.

9. SAME—*restrictions.* If the directions given and the restrictions imposed, are not in affirmance of the legal duties and obligations of the trustee, and do not promote the interests of creditors, but tend to their injury, the assignment can not be sustained. The trustee must be left free to act in accordance with the rules and principles which govern trustees in similar cases.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action of ejectment, brought by Seth W. Hardin against Nial S. Osborne, for certain lands in Will county.

It appears that the lands in question were the property of William B. Egan, under purchases from the United States. They were sold by the sheriff December 23, 1837, under a judgment in favor of Eurotus P. Hastings, against Egan. December 1, 1840, the sheriff conveyed the same property to Bailey & Reynolds, of New York, as redeeming judgment creditors. May 1, 1841, Bailey & Reynolds make deed to Brower & Wyncoop, in trust for creditors. August 13, 1860, Brower & Wyncoop convey to Hardin.

On the other hand, it is known that Egan, on the first day of July, 1837, made a deed of the same and other lands to Josiah S. Breese, of Chicago, in trust for the payment of his debts, to the amount of about $10,000, owing to persons living in the city of Chicago, and in various States, the firm of

Bailey & Reynolds, of the city of New York, being among their creditors. The trust, so far as related to the Chicago creditors, was absolute, and provided for their payment in advance of all others. There was also a condition imposed upon foreign creditors, from which the preferred class was exempt—they were to be absolutely excluded from the benefit of the assignment unless formally accepting its provisions within thirty days after notice. Extraordinary and unusual powers were conferred, such as authorizing the trustee to sell at private sale within two years, at his discretion; to fix prices and terms; to sell or mortgage for payment of taxes and assessments; that, if the trustee could not sell without loss, etc., the whole to be sold at auction at the end of two years.

In absence of formal acceptance of the trust by Breese, it is shown that he afterwards made deeds to a portion of the same lands.

Upon the conclusion of the proceedings in bankruptcy, against Bailey & Reynolds, the same lands (or their interest in them) were sold to J. D. Brown for a nominal sum. It is further shown, that William Stuart, the attorney of Bailey & Reynolds, and of Brower & Wyncoop, January 13, 1845, purchased the lands at sheriff's sale for taxes, for the benefit of his clients, but afterwards held for himself.

Through various channels, the title went to John Forsythe, who went into possession about 1863–4, by placing the defendant upon the lands. The statement of points made on the trial will be found in the opinion of the court.

Mr. EDMUND S. HOLBROOK, for the appellant.

Mr. G. D. A. PARKS, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The objection to the title of appellant, is the alleged insufficiency of the acknowledgment to the deed from Bailey & Reynolds to Brower & Wynkoop.

The same acknowledgment was passed upon in *Hardin* v. *Kirk*, 49 Ill. 153, in which case the only reference to the certificate was, that it did not show in what State the acknowledgment was made. It is true, that the venue to the certificate of the commissioner is simply "County of New York," and from it we can not infer that it was made in the State of New York. But the certificate of magistracy is full and formal, and is entitled, "State of New York, city and county of New York, ss.," and is to the effect that the officer, at the time of taking the acknowledgment, was a commissioner of deeds for the city and county, residing therein, commissioned, sworn, and duly authorized to take acknowledgments, and that his signature was genuine.

This certificate of magistracy was not noticed by the court in the reported case in 49 Ill. It was either not before the court, or was entirely overlooked.

By force of the two certificates, we must presume that the acknowledgment was taken in the State of New York, and in the county of New York. There the commissioner resided, and the legal presumption is, that he acted in the place where he had jurisdiction. It would be an unreasonable and violent conclusion, that an officer attempted the discharge of his duty in some State other than the one in which he was authorized to act.

In addition, however, there was the certificate of the clerk of the Supreme Court of Chautauqua county, in the State of New York, that the deed had been executed and acknowledged in conformity to the laws of that State in existence at the time of its execution and acknowledgment. Under the provisions of the statute, this entitled the deed to be used as evidence, without further proof.

It was, therefore, error not to permit this deed to be introduced as evidence upon the trial.

As it was competent evidence, we need not discuss the error assigned, in excluding the parol proof of its contents.

The defendant, in the court below, relied upon a deed to one Stuart, as color of title, and also offered a deed from Egan to Breese, embracing the lands in controversy, for the purpose of showing an outstanding title, and, for the same purpose, introduced in evidence decrees in bankruptcy against Bailey & Reynolds, the grantors of the plaintiff; an order for the sale of the property of the bankrupts, including the lands in question, and a deed from the assignee to Brown, made in 1858.

According to the opinion, in the case of *Hardin* v. *Crate*, of the present term, *post*, p. 215, the deed to Stuart is effectual, as color of title, acquired in good faith, to hold 160 acres of the land described in the declaration, as there was payment of taxes, accompanied with possession, for the period required by the statute. The proof does not show the payment of taxes for seven years upon the 40 acres described.

The deed to Brown was properly rejected, as evidence of outstanding title. The decrees in bankruptcy, and the order to sell the property of the bankrupts, were subsequent to the deed made by them to Brower & Wynkoop. The bare fact that the acknowledgment to the latter deed was after the rendition of the decrees, is not sufficient to defeat the title.

The deed of the bankrupts, made prior to the declaration of bankruptcy, vested the legal title in the grantees, at the time of its delivery. In the absence of proof to the contrary, the presumption of law is, that it was delivered upon the day of its date, and the subsequent date of the certificate of acknowledgment can not overcome the presumption. *Deininger* v. *McConnel*, 41 Ill. 227; *Jayne* v. *Gregg*, 42 Ill. 413; *Darst* v. *Bates*, 51 Ill. 439.

The deed from Egan to Breese presents a more difficult and important question for solution. It is in the form of a deed of trust, conveying to the trustee a large amount of lands, for the purpose, as is alleged in the deed, of securing and paying the moneys due to certain enumerated creditors. It is dated the first day of July, 1837, and the only action under it, until 1857, was a sale and conveyance of a small portion of the

7—60TH ILL.

lands, by the trustee, in the years 1837 and 1838. In 1857, the trustee, in consideration of one dollar, conveyed all the remaining lands, which had not been conveyed to other parties in good faith, to Scammon.

Remote grantors of the plaintiff, who are mentioned amongst the enumerated creditors, obtained judgments against the assignor, in the same month and year in which the deed was executed, but, as is admitted, subsequent to the record of the same. These parties resided in New York and Detroit, in 1837.

The total amount of debts mentioned in the deed is a fraction over $10,000, and the number of acres of land, beside some lots in Chicago, is 5000. So far as is shown, only 1200 acres of land were sold and conveyed, by the trustee, during a period of twenty years, and prior to the year 1857, when all the lands undisposed of were quitclaimed to Scammon for $1.

The deed does not purport to embrace all the property of the debtor. No personal property is mentioned, and we can not even infer that all the real estate of the assignor was conveyed to the trustee. Neither is it, in terms, or by any fair intendment from the language used, a deed for the benefit of all creditors.

These statements comprise all which need be made to afford a comprehension of the view which we have been compelled to take of this deed. It directed, in most explicit language, the exclusion of the non-resident creditors from any participation in the trust fund, unless it was accepted by them, in writing, within thirty days after actual notice of its execution. This exclusion did not apply to the creditors in Chicago. As to them, the deed was absolute.

Was the time reasonable for acceptance, and the distinction between the creditors necessary, just or right?

Prior to the clause providing for the exclusion, the creditors were classified in the deed. The classes were fifteen in number, and the judgment creditors, through whom the plaintiff claims title, were in the tenth and twelfth classes. Their debts

were postponed, and the Chicago creditors were preferred, in the order of payment, with the exception of two, whose debts only amounted to $470, while the total amount of the debts of the judgment creditors, according to the deed, was $3300, and the debts of the excluded creditors, who might not accept within thirty days, were $5300, more than one half of the entire indebtedness secured.

In the exercise of this preference, the debtor had done what the law permitted.

While, however, courts will sustain assignments preferring creditors, they are ever watchful to prevent conditions onerous, burdensome and unjustly discriminating, and which must result in giving the debtor the control of a large part of the assigned property, and enable him to defeat the avowed purpose of the conveyance. Such conditions should always taint the instrument with fraud.

It is also a settled principle, that the reservation of a use, or benefit, to the grantor, voids the assignment. The distinction is exceedingly nice and difficult of apprehension, between a use or benefit reserved, and a condition or limitation imposed, which, in its necessary operation, must result in benefit to the assignor, and relieve the assigned property of more than one-half the indebtedness.

The exclusion of the foreign creditors could not possibly have been of any benefit to the home creditors. The trust fund must, at all events, be exhausted, if necessary, for the payment of the debts of the latter. They were equally secure with or without the clause of exclusion. What, then, was the object of the provision? Why should there be an unfair and odious distinction between resident and non-resident creditors, in addition to the preference already made?

After mature thought, our conclusion is, that the intent was to defraud the non-resident creditors. If they accepted within thirty days, they were postponed to the preferred creditors. If they did not accept, they were denied any benefit of the fund. What is the result, if the deed be held valid? The

assignor will receive any surplus, through the hands of a friendly trustee of his own selection, which may be, after the payment of the preferred creditors. After the satisfaction of creditors, he has a right to any surplus, but when the deed operates to the benefit of the grantor, and the injury of creditors, it should be held void.

Certain creditors were preferred. This was right, and if the acceptance had been made to apply to all creditors, the objection we take would not be so glaring. It would then not be so much like an attempt to extort from a class of creditors, but would more nearly resemble an unconditional surrender of property for the benefit of all, with special preferences.

Was the time for acceptance reasonable? As to reasonable time, there is, and can be, no absolute rule. It must be determined by the circumstances of the case, the quantity of the estate, the number of creditors, and the distance between the parties. As the object of the limitation is to afford to creditors an opportunity to accept or reject the terms offered, the time must not be so short as to prevent a thorough examination.

The utmost good faith must be observed, and the time must not be so short as not to afford ample opportunity for inquiry. *Ashurst* v. *Martin,* 9 Porter (Ala.), 566.

In *Fox* v. *Adams,* 5 Greenleaf, 245, the assignment was made for the benefit of creditors who should become parties within seventy days. The court held that the shortness of time created a presumption of fraud, and constituted a sufficient objection to the validity of the assignment.

In this case, there was scarcely sufficient time for examination, consultation with counsel, and deliberation, within the time in which the acceptance must be signed, or the exclusion follow.

The proof is that, in 1837, with the best conveyance and most expeditious travel, it would take from ten days to a fortnight to effect communication between Chicago and New

York. The creditors upon whom the exclusion was to oper-
ate, resided in Michigan, Missouri and New York. No allow-
ance is made for miscarriage by mail, or failure of communi-
cation from unavoidable causes; and under the most favorable
circumstances, the creditors might have ten to fifteen days for
determination, after actual notice. In so important a matter
to creditors, distant one thousand miles, an adequate opportu-
nity was not afforded for an investigation into the title, the
incumbrances upon, and the value of the property, and the
fairness of the transaction.

The fact urged by the counsel for appellee, that the credit-
ors in New York had an attorney resident in Chicago, is not
entitled to weight. An ordinary attorney had no right to
make the required acceptance. Special written authority
would have been necessary to enable a third party to effectuate
it.

An honest man, with an honest intent, would never have
conceived the idea evolved in this deed. It is irreconcilable
with the laudable purpose of making a surrender of all the
property of a debtor for the benefit of all his creditors.

Our conclusion is, that the deed was intended to coerce an
acceptance. The debtor knew the difficulty, the almost im-
possibility, of compliance, and must have designed the clause,
of malice and fraud, to hinder, delay and defraud his credit-
ors.

Under the circumstances, the time for acceptance was not
reasonable, and the requirement, with exclusion as the penalty
for non-acceptance, was coercive, unjust and fraudulent.

Another unusual provision in the deed was, that the trustee
should sell the real estate to pay the debts mentioned, " at the
most favorable opportunity which should occur after its execu-
tion," " *of which event he was to be the sole judge,* " and at all
events within the period of two years from the date, at private
sale, for a fair and reasonable price, having reference to the
value of the lands and the improvements, and if the property
could not be sold at private sale, within two years, without

great loss, then, at the expiration of that period, it should be sold absolutely at public auction.

Here are limitations imposed upon the trustee in the discharge of his duties, and obstacles interposed to a sale of the property, which must have been intended to have the effect to hinder and delay creditors, within the purview of the statute.

Stipulations in deeds of assignment, that a trust shall be executed within a specified time, have been sustained, but the time must be reasonable under the circumstances. So, too, discretion may be given to the assignee. It must not, however, be unlimited, but subject to the control of a court of equity.

The principle which pervades this branch of the law requires an unconditional surrender of the property of the debtor, and its immediate application in favor of creditors. Unusual provisions in deeds are looked upon with suspicion; and restrictions, which have the effect unnecessarily to delay creditors, indicate an intent to defraud. If fraud lurk in any of the clauses, however speciously concealed, when discovered, the instrument must be pronounced invalid. *McIntire* v. *Benson,* 20 Ill. 500; *Sackett* v. *Mansfield,* 26 Ill. 21; *Curtis et al.* v. *Leavitt,* 15 N. Y. 10; *Brigham* v. *Tillinghast,* 13 N. Y. 214.

If the assignee is invested with power which the law would not give, and it is absolute and improper, the assignment must be held void. If the directions given, and the restrictions imposed, are not in affirmance of the legal duties and obligations of the trustee, and do not promote the interests of creditors, but tend to their injury, the assignment can not be sustained. The trustee must be left free, to act in accordance with the rules and principles which govern trustees in similar cases. *Dunham* v. *Waterman,* 17 N. Y. 9; *Jessup* v. *Hulse,* 21 N. Y. 168.

Under this deed the trustee could not sell at private sale, unless he obtained a fair and reasonable price, with special reference to the value of the lands and their improvements.

He alone determined the value which might restrict a sale. He could not sell at private sale if great loss might ensue. He, therefore, was the judge of the probable sacrifice, the fear of which should forbid the sale. He could not sell at private sale, unless the time and circumstances were suitable. He decided upon the "favorable opportunity," without control. Of this he was the *sole judge.* The power to sell privately was so trammelled that the debtor, in effect, directed a delay for two years.

The plain import of the language is, that the assignee might postpone any sale for two years. He was made the sole judge of the fit and convenient time, during two years, for a private sale. For that period the creditors might be delayed, without any power to force action through the courts. The power conferred upon the trustee is wholly incompatible with any rights in the creditors. The former could not be the sole judge, if his judgment could be directed or restrained.

We think the obvious intent, and the necessary effect, of this clause, were to hinder, delay and defraud creditors.

The hindrance and delay of creditors make the assignment fraudulent and void in law. The postponement of the sale and payment for an unreasonable time, will also avoid it.

One expressed object of the conveyance in this case was, to prevent a sacrifice of the property by a suspension of the sale for two years. If "great loss" ensued, the plain direction to the trustee was, not to sell.

Under such circumstances, one year's suspension of proceedings was held to be fraudulent. *Ward* v. *Trotter*, 3 Monroe, 1.

In *Green* v. *Trammell*, 3 Md. 11, the deed was held to be fraudulent and void as to creditors, where they were required to covenant for an extension of the payment of their claims for six to twenty-four months.

In *Mitchell* v. *Beal*, 8 Yerger, 134, the postponement of the sale of the property for three years rendered the deed fraudulent.

In *Sheever's Assignees* v. *Lautzerheiser,* 6 Watts, 543, the deed of assignment gave more than one year for the payment of the proceeds of the sale of the goods, and it was held invalid.

In *Hart* v. *Crane,* 7 Paige, 37, the chancellor ruled that the assignee was bound to sell the property, either at private or public sale, without delay, and that the sale could not be deferred for the purpose of obtaining higher prices, without the consent of the creditors.

The directions to the assignee, in the clause under consideration, make the deed fraudulent in law.

One other point remains to be considered.

As the section of the statute relied upon requires, to sustain color of title in good faith, the payment of taxes for seven successive years, upon vacant and unoccupied land, it is urged that Hardin's possession defeated the rights acquired under the color of title, by a change of the land from vacant to occupied land.

We can not regard the bare entering upon the land, breaking one or two furrows, and a proclamation of his rights by appellant, as anything more than a symbolical possession. He abandoned the land immediately, paid no taxes, and was absent for years.

There was no manifestation of the intention to appropriate the land to actual use. *Brooks* v. *Bruyn,* 18 Ill. 539 ; same case, 24 Ill. 372 ; *Truesdale* v. *Ford,* 37 Ill. 210.

The judgment is reversed and the cause remanded.

*Judgment reversed.*


Mr. JUSTICE BREESE took no part in the decision of this cause.